**NATIONAL LEASED HOUSING ASSOCIATION, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Nos. 6–87C, 324–87C, 204–88C and 6–90C.

United States Court of Federal Claims.

Feb. 17, 1995.

Charles L. Edson, Washington, DC, for plaintiffs. Harry J. Kelly and Richard M. Price, of counsel.

John E. Kosloske, with whom were Asst. Atty. Gen. Frank W. Hunger and David M. Cohen, Director, Washington, DC, for defendant.

*OPINION*

ANDEWELT, Judge.

I.

In these consolidated actions, plaintiffs, National Leased Housing Association and other present or former owners of rental housing projects, seek back-rent payments from the United States under Housing Assistance Payments (HAP) contracts that plaintiffs entered with the Department of Housing and Urban Development (HUD). The HAP contracts cover housing units that plaintiffs rented to low-income families pursuant to Section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f. Plaintiffs contend that HUD calculated the annual rent adjustments due plaintiffs for certain Section 8 rental units in a manner that violated the terms of the HAP contracts.

The background facts underlying this action are set forth in two prior opinions. *National Leased Housing Ass'n v. United States*, 22 Cl.Ct. 649 (1991) (*NLHA I*); *National Leased Housing Ass'n v. United States*, 24 Cl.Ct. 647 (1991) (*NLHA II*). This opinion addresses an issue raised in the parties' cross-motions for summary judgment which this court addressed briefly in *NLHA II*, 24 Cl.Ct. at 657–58. The issue centers on whether the version of the HAP contracts used after August 1980 obliges HUD, when calculating the annual rent adjustments, to comply with two HUD regulations, 24 C.F.R. §§ 10.1 and 15.11, which track the requirements of the Administrative Procedures Act (APA), 5 U.S.C. §§ 551, 553, and the Free-

dom of Information Act (FOIA), 5 U.S.C. § 552, respectively.

II.

The HAP contracts address periodic rent adjustments in a single section, often found at Section 1.9. Section 1.9 provides for the annual adjustment of rents charged for units covered by the HAP contracts. Section 1.9(b) discusses the calculation of annual rent adjustments through the use of automatic annual adjustment factors (AAAFs). *NLHA I*, 22 Cl.Ct. at 658–59. Section 1.9(d) contains an overall limitation which provides, in pertinent part: "Not withstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between rents charged for assisted and comparable unassisted units, as determined by the Government...."

HUD typically determined the amount of the periodic annual rent adjustments through application of the AAAFs. Occasionally, however, HUD based the periodic adjustments on application of the overall limitation in Section 1.9(d). When comparability studies conducted by HUD showed that a positive rent adjustment based on application of the AAAFs would result in a rent that was materially in excess of the rents charged for comparable unassisted units, HUD refused to grant the full AAAF-based adjustment and instead granted a lower increase so as to result in a rent that was not materially different from the rents charged for comparable unassisted units.

By using the phrase "as determined by the Government," the overall limitation in Section 1.9(d) would seem to grant HUD the discretion to determine the amount of the rents charged for comparable unassisted units and then to assess whether a proposed rent adjustment would result in a "material difference" between the rent charged for the Section 8 assisted unit and the rents charged for comparable unassisted units. Where a contract grants one party such discretion to make material determinations, a court ordinarily will not overturn that party's determination unless the determination is arbitrary and capricious. *American Export Isbrandts-*

*en Lines, Inc. v. United States,* 204 Ct.Cl. 424, 499 F.2d 552 (1974). ("It is a well-established principle of law that a 'party vested with contractual discretion must exercise his discretion reasonably and may not do so arbitrarily or capriciously.'" *Id.* at 465, 499 F.2d at 576 (quoting *Pacific Far East Line, Inc. v. United States,* 184 Ct.Cl. 169, 184, 394 F.2d 990, 998 (1968)).

■ Plaintiffs herein do not contend that the rents HUD calculated for the comparable unassisted units were inaccurate or that HUD had erred in concluding that application of the AAAFs would have resulted in a rent that was materially above the rents charged for comparable unassisted units. Rather than attacking the substance of HUD's rent determinations, plaintiffs attack only the process by which HUD arrived at those determinations. HUD employees apparently calculated rents charged for comparable unassisted units pursuant to procedures articulated in certain internal HUD memoranda. *NLHA II,* 24 Cl.Ct. at 656. Plaintiffs fault HUD for failing to submit these procedures for public comment pursuant to 24 C.F.R. § 10.1 or to publish these procedures pursuant to 24 C.F.R. § 15.11.

Plaintiffs' argument that they can maintain a breach of contract claim if HUD fails to comply with these regulations is based on the scope of contract clause (Section 1.1(g)) contained in HAP contracts entered after August 1980. Section 1.1(g) provides:

*Scope of Contract.* This Contract, including the exhibits, whether attached or incorporated by reference, comprises the entire

agreement between the Owner and HUD with respect to the matters contained in it. Neither party is bound by any representations or agreements of any kind except as contained in this Contract, *any applicable regulations,* and agreements entered into in writing by the parties which are not inconsistent with this Contract.

(Emphasis added.) Plaintiffs contend that the addition of the phrase "any applicable regulations" to post-August 1980 HAP contracts has the effect of making HUD's compliance with 24.C.F.R. §§ 10.1 and 15.11 an enforceable part of the HAP contracts.[1]

## III.

The post-August 1980 version of the HAP contracts does not contain any statement suggesting that the parties had agreed that Sections 10.1 and 15.11 would be included as "applicable regulations." Indeed, these contracts contain no reference at all to Section 10.1 or 15.11. The contracts do, however, specifically reference certain other HUD regulations. The post-August 1980 HAP contract was designed as a generic contract to be used with either new construction or substantial rehabilitation types of Section 8 housing projects and with or without state agency involvement. Page 1 of the contract identifies the various possible Section 8 projects, lists the HUD regulations covering each particular type, and leaves a space for the parties to make a check mark to identify the particular type of contract and HUD regulations involved. Page 1 of the contract provides, in pertinent part:

---

1. Prior to August 1980, the analogous HAP contract provision did not incorporate any HUD regulations. The pre-August 1980 contract provided, in pertinent part:

This Contract, including such exhibits, comprises the entire agreement between the parties hereto with respect to the matters contained herein, and neither party is bound by any representations or agreements of any kind except as contained herein or except agree-

ments entered into in writing which are not inconsistent with this Contract.

In *NLHA II,* 24 Cl.Ct. at 657–58, this court concluded that the HAP contracts entered prior to August 1980 did not include any commitment on HUD's part to comply with the APA and FOIA or Sections 10.1 and 15.11. The court requested further briefing on HUD's obligations under the post-August 1980 version of the HAP contracts.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM

PART 1 OF THE

HOUSING ASSISTANCE PAYMENTS CONTRACT

Type of Project: Private–Owner/HUD ___ or PHA–Owner/HUD ___
Small Project: ___or Partially–Assisted Project ___ or Other ___
New Construction, Part 880 ___ or Substantial Rehabilitation,Part 881 ___
     Part 883 ___           Part 883 ___

"Part 880" refers to 24 C.F.R. pt. 880, which is entitled "Section 8 Housing Assistance Payments Program For New Construction." "Part 881" refers to 24 C.F.R. pt. 881, which is entitled "Section 8 Housing Assistance Program For Substantial Rehabilitation." "Part 883" refers to 24 C.F.R. pt. 883 which is entitled "Section 8 Housing Assistance Payments Program—State Housing Agencies." If a contract covers new construction and state agencies are not involved, the parties would simply place a check mark on page 1 next to "Part 880."

Given the form of the contract, the answer to the question of which regulations are encompassed within the term "applicable regulations" appears to be answered within the four corners of the contract document. Page 1 of the contract lists different HUD regulations, certain of which will apply to the contract and others of which will not. The contract obliges the parties, in effect, to distinguish those regulations that apply from those that do not by making the required check mark on page 1. The reference to "applicable regulations" in the scope of contract clause therefore appears to refer to those regulations listed on page 1 of the contract which the parties have rendered applicable by their mark next to the C.F.R. part. The "checked" regulations are "applicable regulations" and the "unchecked" regulations are not.

This interpretation is reinforced by the text of those regulations that are specifically listed in the contract. The regulations contained in Part 880 ("New Construction"), Part 881 ("Substantial Rehabilitation"), and Part 883 ("State Housing Agencies") are detailed and extensive, and each part contains a comprehensive regulatory scheme for the particular HUD program involved. Each part is self-contained and appears by its terms to encompass all of the applicable procedures for the particular type of contract

involved. Accordingly, Section 880.101(a)(1) states in pertinent part: "This part contains *the* policies and *procedures applicable* to the Section 8 new construction program" (emphasis added). Similarly, Section 881.101(a)(1) states that "[t]his part contains *the* policies and *procedures applicable* to the Section 8 substantial rehabilitation program" (emphasis added), and Section 883.101(a)(2) states that "[t]he regulations in this part 883 contain *the* policies and *procedures applicable* to the Section 8 program for these State agencies" (emphasis added). Therefore, because the regulations checked on page 1 of the contract contain "the policies and procedures applicable to the [particular] Section 8 program" implemented by the contract, the term "applicable regulations" in Section 1.1(g) would seem to refer to those same checked regulations.

This interpretation is also supported by the historical context in which the reference to "applicable regulations" was inserted into the HAP contract in August 1980. The addition of the reference to "applicable regulations" was not the only change made to the HAP contract in August 1980. Prior to August 1980, HUD had used distinct contracts to cover the different types of Section 8 programs, *i.e.,* it used one contract form for new construction projects and a different contract form for substantial rehabilitation projects. In August 1980, HUD began to use a single, generic contract form, which required HUD to select a mechanism by which the parties could identify in the contract the particular type of Section 8 program to which the contract applied. Shortly before the August 1980 modification, HUD had completed a substantial revision of the regulations covering Section 8 housing. The new regulations covering new construction,

24 C.F.R. pt. 880, were effective November 1979, *see* 44 Fed.Reg. 59,410 to 59,448 (Oct. 15, 1979), and the new regulations covering substantial rehabilitation, 24 C.F.R. pt. 881, were effective February 20, 1980, *see* 45 Fed. Reg. 7,085–7,104 (Jan. 31, 1980).[2] This historical context suggests that when HUD listed the regulations on page 1 and changed Section 1.1(g) to include "applicable regulations," HUD was reacting to its recent decision to use a generic contract, which required some identification of contract type, and to incorporate into that contract the recently revised regulations. The timing of the modification in Section 1.1(g) does not provide equivalent support for an interpretation of "applicable regulations" that encompass Sections 10.1 and 15.11 because by August 1980, Sections 10.1 and 15.11 were "old news." The pertinent versions of Sections 15.11 and 10.1 were incorporated into HUD regulations in 1967 and 1976, respectively.

### IV.

Notwithstanding the form of the post-August 1980 contract, the text of the referenced regulations, and the historical context surrounding the addition to the contract of the phrase "applicable regulations," plaintiffs contend that regulations not referenced in the contract may be "applicable regulations." This proposed interpretation, however, would seem necessarily to produce considerable indefiniteness as to the parties' respective obligations under the contract. There are literally thousands of HUD regulations not mentioned in the contract.[3] Therefore, in order to determine the parties' contract obligations under plaintiffs' proposed interpretation, each of these thousands of HUD regulations would have to be read and analyzed and an evaluation made as to which regulations can somehow be characterized as "applicable" to the HAP contract. This type of inquiry could raise a Pandora's box of potential problems and disagreements. In this setting, it would seem that if the parties intended the contract to incorporate regulations other than those that are specifically directed at Section 8 housing, the parties either would have provided additional detail as to which of the thousands of regulations are "applicable," or at least would have articulated some standard by which the parties could assess applicability. *See Smithson v. United States,* 847 F.2d 791, 794 (Fed.Cir.1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989) (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 609, 372 F.2d 1002, 1010 (1967)) (the court refused to interpret the language of the contract involved to incorporate all of the agency's regulations because that interpretation would permit the contractor to "choose among a multitude of regulations as to which he could claim a contract breach—and thus '[a] wholly new ground of obligation would be summarily created by mere implication.'")

During oral argument, in response to this court's questions concerning which of the thousands of HUD regulations not mentioned in the contract qualify as "applicable regulations," plaintiffs' counsel was able to identify only the two regulations at issue here, Sections 10.1 and 15.11. But this conclusion does not provide compelling support for plaintiffs' interpretation. If the parties intended the term "applicable regulations" to encompass only two regulations not cited in the contract, the parties would have been expected to identify these two regulations explicitly in the contract rather than resort-

---

**2.** The regulations in Parts 880 and 881 were "revised to accomplish three major objectives. First, the language of the regulation[s] has been simplified and the format altered to make the regulation[s] easier to read and use. Second, rent cost and amenities limitations, and requirements for cost justification of rents in certain cases have been added in order to control and reduce the costs of the program. Third, processing changes have been made to assure coordination of Section 8 and HUD mortgage insurance programs...." 44 Fed.Reg. 59,408 (Oct. 15, 1979); 45 Fed.Reg. 7082 (Jan. 31, 1980). Parts 880 and 881 were restructured to add a Subpart

E ("Housing Assistance Payments Contract") proscribing rules pertaining to the HAP contract between the project owner and HUD or the public housing agency, and a Subpart F ("Management") concerning the management of a subsidized project including rent adjustment procedures.

**3.** Title 24 of the C.F.R. contains 3,500 separate parts dealing with a wide range of topics from the general organization of HUD to specific rules regarding administration of particular programs.

ing to an indefinite reference to "applicable regulations."

The strongest aspect of plaintiffs' argument is the broad wording of Sections 10.1 and 15.11. Plaintiffs focus on the text of these regulations and argue that these regulations are so broad in scope that they necessarily apply to the instant HAP contracts. The court acknowledges that the regulations are relatively broad in scope, but the nexus between the HAP contracts and Sections 10.1 and 15.11 is not so apparent so as to demand the conclusion that the parties necessarily intended to include these regulations by the phrase "applicable regulations." Sections 10.1 and 15.11 are not located within Subtitle B, Chapter VIII, of Title 24 of the C.F.R., containing the regulations covering the "Office of the Assistant Secretary for Housing" which has responsibility over Section 8 programs. Rather, Sections 10.1 and 15.11 are located in Subtitle A which covers the "Office of the Secretary, Department of Housing and Urban Development." In addition to not being directed specifically at Section 8 housing, Sections 10.1 and 15.11 do not focus specifically on HUD's interpretation and implementation of the terms and obligations of HUD's contracts. Section 15.11 does not even mention contracts. It incorporates the general requirements of the FOIA for publication of certain agency rules and specifies that these publication requirements are "for the guidance of the public." Government contractors, however, are not mere members of the public, but rather have had the opportunity to define their respective obligations in a written contract.

Section 10.1 does include an explicit reference to contracts; it provides for public participation in rulemaking with respect to HUD programs including "matters that relate to ... contracts." But it is far from clear from the text of Section 10.1 that this reference to "contracts" was intended to oblige HUD to employ formal rulemaking procedures with respect to HUD's determinations under existing contracts, including HUD's application

or interpretation of specific contract terms or HUD's interpretation of its specific contractual obligations. Rather, Section 10.1 arguably is directed at the contracting process generally, such as questions of eligibility for government contracts, rather than enforcement of HUD's rights under the contracts. In this regard, in *NLHA II*, 24 Cl.Ct. at 657–58, this court concluded, in effect, that Section 10.1 did not "apply" to the pre-August 1980 HAP contracts in that Section 10.1 did not create any obligations that could be enforced through a breach of contract claim. Because Section 10.1 did not apply to the pre-August 1980 contracts, it is not apparent that a reference in the post-August 1980 contracts to "applicable regulations" would have been intended to include Section 10.1.[4]

Ultimately, upon consideration of all of the relevant facts and legal arguments, this court concludes that the answer to the question of which regulations constitute "applicable regulations" is found inside, not outside, the contract. The term "applicable regulations" was added to the post-August 1980 HAP contracts to incorporate the recently revised HUD regulations that are specifically cited in the contracts and that purport, by their terms, to constitute "the policies and procedures applicable to the Section 8 program." Sections 10.1 and 15.11 are not "applicable regulations," and HUD never obliged itself contractually to comply with these provisions when exercising the discretion allowed it under the phrase "as determined by the Government" contained in Section 1.9d of the HAP contracts.

In this regard, the determinations that HUD must make under Section 1.9(d) are narrow and relatively straightforward. HUD had to identify unassisted units comparable to the assisted units covered by the contract, determine the rents charged for those comparable units, and assess whether the rents charged for those comparable unassisted units were materially different from the contract rent that would result from application of the AAAFs. If HUD determined that it was appropriate to change the pre-

---

4. Section 10.1 simply purports to articulate HUD's "policy" with respect to rulemaking. ("It is the policy of [HUD] to provide for public participation in rulemaking....") By merely stating a "policy," Section 10.1 would not seem intended to create an enforceable obligation which, if incorporated into a contract, could give rise to a breach of contract claim.

August 1980 contracts so as to permit project owners greater participation in these determinations, it is reasonable to assume that HUD would have defined the scope of that participation with specificity rather than by a reference to "applicable regulations."

### Conclusion

The parties agree that there are no material facts in dispute, that there is a dispute as to an issue of law, and that the court should resolve that legal dispute through summary judgment pursuant to RCFC 56. For the reasons set forth above, the court accepts defendant's interpretation of the term "applicable regulations" in Section 1.1(g) of the post-August 1980 HAP contracts. Plaintiffs may not base a breach of contract claim on HUD's alleged violation of Sections 10.1 and 15.11. Because the parties agree that there are no remaining issues for the court to resolve in these actions, the Clerk of the Court is directed to enter judgment dismissing plaintiffs' complaints. No costs.

IT IS SO ORDERED.