**ACACIA VILLA, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 90–9C.**

United States Court of Federal Claims.

July 31, 1996.

Everett C. Johnson, Washington, DC, for plaintiffs. Leonard A. Zax and Minh N. Vu, of counsel.

John E. Kosloske, with whom were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Washington, DC, for defendant. Carole W. Wilson, Howard M. Schmeltzer, and Barton Shapiro, Department of Housing and Urban Development, of counsel.

## OPINION

ANDEWELT, Judge.

### I.

In this contract action, plaintiffs, Acacia Villa and 27 other developers of rental housing projects, seek back rent payments for housing units rented to low-income families under Housing Assistance Payment (HAP) contracts entered into pursuant to Section 8 of the United States Housing Act of 1937, as

amended, 42 U.S.C. § 1437f. The relevant background facts are set forth in this court's prior decision, *Acacia Villa v. United States*, 24 Cl.Ct. 445 (1991). This action is before the court on plaintiffs' motion for partial summary judgment with respect to two of the plaintiffs, Lindley Manor Apartments and El Portal Gardens. For the reasons explained by the court during oral argument, this opinion will focus on a central issue of contract interpretation raised in the cross-motions involving the calculation of annual rent adjustments for housing units covered under the HAP contracts.

## II.

Each HAP contract covers a number of individual housing rental units. For each unit covered, the HAP contract establishes an initial contract rent and then, in Section 1.8 of the contract, provides for automatic adjustments to that rent on an annual basis. Section 1.8 anticipates that the amount of these yearly rent adjustments ordinarily will be determined by application of Automatic Annual Adjustment Factors (AAAFs), which the Department of Housing and Urban Development (HUD) periodically calculates. HUD establishes AAAFs for different geographic areas in the United States [1] based on data concerning rent and utility (*e.g.*, gas and electric) trends contained in the Consumer Price Index (CPI) and other surveys. *See* 52 Fed.Reg. 9478, 9479 (1987) (describing HUD's methodology for calculating AAAFs); *National Leased Housing Ass'n v. United States*, 22 Cl.Ct. 649, 657 & n. 6 (1991). HUD ordinarily calculates the amount of the annual rent adjustments by multiplying the prior year's rent charged for the covered unit by the most recently published AAAF applicable to the geographic area in which the unit is located. Although application of the AAAFs is the "presumptive" method for calculating these yearly rent adjustments, *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 19, 113 S.Ct. 1898, 1903–04, 123 L.Ed.2d 572 (1993), Section 1.8(d) contains an "Overall Limitation" which describes circumstances

under which HUD is not required to base the rent adjustments on the applicable AAAFs. Section 1.8 provides, in pertinent part:

## 1.8 *RENT ADJUSTMENTS*

\*   \*   \*   \*   \*   \*

b. *Automatic Annual Adjustments.*

(1) [AAAFs] will be determined by the Government at least annually; interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid directly by the Families.

(2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable [AAAF] most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

c. *Special Additional Adjustments.* Special additional adjustments shall be granted, when approved by the Government, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, or similar costs (i.e., assessments, and utilities not covered by regulated rates), but only if and to the extent that the Owner clearly demonstrates that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by automatic annual adjustments. The Owner shall submit to the Government financial statements which clearly support the increase.

d. *Overall Limitation.* Not withstanding any other provisions of this Contract,

---

**1.** In 1987, HUD established distinct AAAFs for four census regions, the States of Alaska and Hawaii, and 72 metropolitan areas. *See* 52 Fed. Reg. 9478, 9479 (1987). As of 1995, HUD has established AAAFs for ten HUD regions and 102 metropolitan areas. *See* 60 Fed.Reg. 55934, 55935 (1995).

adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government; provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

For three years, 1984, 1985, and 1986, HUD did not apply the applicable AAAFs or make any adjustments to plaintiffs' contract rents. HUD concedes that during these years it did not base its decision not to grant AAAF-based adjustments on any direct or indirect determination by HUD under Section 1.8(d) that such adjustments would result in "material differences between the rents charged for assisted and comparable unassisted units."[2] Rather, the Los Angeles and San Francisco HUD Area Offices failed to grant any adjustments during these years because plaintiffs had failed to comply with the policy announced by these offices that required project owners to make a timely request if they wanted an AAAF-based adjustment on the contract anniversary date. Under this announced policy, if the project owners did not submit such a request, then HUD awarded no adjustment. On the other hand, if the project owners did submit a request for an AAAF-based adjustment, HUD warned that before granting an AAAF-based adjustment, HUD may first conduct a comparability study to assess rents charged for comparable unassisted units and then apply the overall limitation in Section 1.8(d) to the AAAF-based adjustment which could result in a contract rent that is lower than the previous year's rent. Thus, if a project owner requested an upward rent adjustment,

it risked the possibility of HUD actually lowering the contract rent for that year.

Plaintiffs contend that this policy is inconsistent with the requirements of the HAP contract. Plaintiffs' argument proceeds essentially as follows. Section 1.8 does not in any way condition a project owner's entitlement to a rent adjustment on the owner requesting such an adjustment. To the contrary, Section 1.8 affirmatively obligates HUD, on the contract anniversary date, to adjust the contract rent based on the applicable AAAF unless HUD determines, pursuant to Section 1.8(d), that an AAAF-based adjustment would result in "material differences between the rents charged for assisted and comparable unassisted units." If HUD determines that an AAAF-based adjustment would produce "material differences," HUD is obligated to adjust the contract rent on the contract anniversary date by either increasing or decreasing the AAAF-based adjustment so as to eliminate such differences.[3] Because HUD did not make any determination as to material differences prior to the anniversary dates of plaintiffs' HAP contracts for the years 1984–1986, HUD breached the HAP contracts by failing to grant AAAF-based adjustments for these years.

Defendant responds that HUD did not necessarily breach the HAP contracts and, in any event, did not damage plaintiffs when HUD failed to adjust the rents on the contract anniversary dates by applying the applicable AAAFs. Defendant argues that Section 1.8(d)'s limitation on rent adjustments that result in material differences serves as an overarching and absolute ceiling on any rent adjustments. Hence, to prove a breach of contract and entitlement to AAAF-based adjustments, plaintiffs would have to demonstrate that had HUD granted AAAF-based adjustments on the contract anniversary

---

**2.** During oral argument, the colloquy between the court and defendant's counsel proceeded as follows:

THE COURT: ... Does the Government contend that the decision not to grant the AAAF-based increases in these three years was in any sense based on a determination directly or indirectly by HUD that the grant of the AAAF-based adjustment would result in a material difference between the rents charged for assisted and comparable unassisted units?

MR. KOSLOSKE: No, we do not contend that. What we are contending is that the LA office and the San Francisco offices didn't give any thought to it one way or the other.

**3.** HUD has concluded that a material difference exists when the AAAF-adjusted rent exceeds rents charged for comparable unassisted units by 20 percent or more. *Park Village Apts. v. United States,* 32 Fed.Cl. 441, 448 (1994).

dates, the adjusted rents would have been consistent with the overall limitation, *i.e.*, that the AAAF-adjusted rents would not have been materially different from the rents charged for comparable unassisted units.

Thus, the essential difference between the parties' respective interpretations of Section 1.8 involves the timing of any comparability study conducted to apply the overall limitation in Section 1.8(d) and the identity of the party that bears the initial burden to conduct that study. Plaintiffs contend that the contract anniversary date is crucial and places the initial burden on HUD to determine by that date whether an AAAF-based adjustment would produce a material difference. If HUD fails to make such a determination prior to the contract anniversary date, then HUD is obligated to grant an AAAF-based adjustment on that date and may not contest that adjustment by later showing that the AAAF-based adjustment resulted in a material difference. Defendant responds that Section 1.8 does not require HUD to make such a determination as to a material difference by the contract anniversary date. Rather, defendant argues, because Section 1.8(d) prevents any adjustment that would result in a material difference, if HUD fails to grant an adjustment on the contract anniversary date, then the plaintiff bears the burden to demonstrate, through a comparability study or otherwise, that an AAAF-based adjustment would not have resulted in a material difference.

### III.

■ Although the contract language is not without some ambiguity, the wording of Section 1.8 tips decidedly in favor of plaintiffs' proposed interpretation. First, plaintiffs are correct that the contract anniversary date is significant regarding the timing of rent adjustments and that Section 1.8 obligates HUD to grant an AAAF-based adjustment on the contract anniversary date if HUD has not previously made a determination that such an adjustment would result in a material difference. The title of Section 1.8(b), "Automatic Annual Adjustments," anticipates that rent adjustments will occur automatically and annually. As to the timing of these automatic adjustments, the only time mentioned in Section 1.8 is the contract anniversary date. Section 1.8(b) mandates that each year on the contract anniversary date, HUD must grant a rent adjustment based on the applicable AAAFs ("[o]n each anniversary date of the Contract, the Contract Rents *shall be* adjusted by applying the applicable [AAAFs]" (emphasis added)). Section 1.8(d) goes on to establish a limitation on rent adjustments under Section 1.8(b) ("adjustments *as provided in this section* shall not" (emphasis added)). That limitation, however, does not change the timing of adjustments but rather simply limits the amounts of these annual adjustments ("adjustments ... shall not result in material differences"). Because Section 1.8(d) does not mention timing, it does not eliminate the Section 1.8(b) obligation to adjust rents automatically on the contract anniversary date.

Moreover, Section 1.8(d) contains a prerequisite to HUD invoking the limitation therein—a determination *by HUD* that an AAAF-based adjustment would result in a material difference ("adjustments ... shall not result in material differences ... *as determined by the Government*" (emphasis added)). *See Alpine Ridge*, 508 U.S. at 21, 113 S.Ct. at 1904–05 ("we observe that [Section 1.8d] expressly assigns to 'the Government' the determination of whether there exist material differences between the rents charged for assisted and comparable unassisted units"); *National Leased Housing Ass'n v. United States*, 32 Fed.Cl. 762, 763 (1995); *Park Village Apts. v. United States*, 32 Fed.Cl. 441, 446–47 (1994). Therefore, unless prior to the contract anniversary date HUD has determined that a material difference would result from application of the AAAFs, the limitation in Section 1.8(d) would not apply, Section 1.8(b) would control, and HUD would be obligated under Section 1.8(b) to grant an AAAF-based adjustment on the contract anniversary date.

### IV.

■ The court's conclusion that the HAP contracts required HUD to grant plaintiffs annual AAAF-based adjustments for the years 1984–1986 is not the end of the legal analysis. As described above, defendant in-

terprets Section 1.8(d) as establishing a mandatory contractual ceiling on the amount of any rent adjustments—rent adjustments "shall not result in material differences." If defendant is correct, then assuming HUD had complied with the requirements of Section 1.8(b) and granted plaintiffs annual AAAF-based adjustments, HUD thereafter arguably could have brought suit seeking a refund on the grounds that contrary to the overarching requirement in Section 1.8(d), the AAAF-based adjustments for those years resulted in rents materially higher than the rents charged for comparable unassisted units. If defendant could have brought such a retroactive suit, then plaintiffs arguably were not damaged by HUD's failure to grant the annual AAAF-based adjustments for the years 1984–1986 as required in the HAP contracts.

For a series of reasons, however, the court concludes that Section 1.8(d) does not authorize such retroactive suits. First, as described above, the essential thrust of Section 1.8 is to mandate that HUD grant rent adjustments annually and automatically on the contract anniversary date. Section 1.8 in effect obligates HUD by that date to set the amount of the annual adjustment using either of two procedures—either by applying the AAAFs directly or by modifying the AAAF-based adjustment so as to comply with Section 1.8(d). If the parties intended HUD's choice between these two procedures to be only provisional in nature and subject to change years later (*i.e.,* to allow HUD to make one determination as to the rent adjustment on the contract anniversary date and then later change its position and seek a refund), the parties would be expected to have articulated such an unusual procedure with some clarity. Instead, Section 1.8 specifies only one date for rent adjustments—the contract anniversary date, and Section 1.8(d), which otherwise limits the adjustment procedures in Section 1.8(b) ("adjustments as provided in this section"), does not specify any flexibility with respect to that date.

Next, allowing retroactive suits would seriously undermine the method Section 1.8 establishes for calculating yearly rent adjustments. Section 1.8 requires HUD to create a mathematical relationship between one year's rent and the next year's rent. As described above, each year HUD must adjust the prior year's rent by applying the AAAFs unless HUD has determined that such an adjustment would produce a material difference between rents charged for assisted and comparable unassisted units. If HUD determines that a material difference would result, then HUD must modify the AAAF-based adjustment so as to eliminate that difference. If retroactive suits are permitted and the prior year's rent is not necessarily fixed, then HUD's yearly assessment of whether to apply the AAAF-based adjustment to the prior year's rent could be misfocused and misleading because the amount of the prior year's rent when performing the mathematical computations may not in the end be the correct prior year's rent. For example, if HUD granted an AAAF-based adjustment in each of the years 1983, 1984, and 1985, and then, before making a determination as to the adjustment for 1986, realized that the AAAF-based adjustment for 1983 resulted in a material difference, a successful retroactive suit for 1983 could have a domino effect and require changes in the 1984 and 1985 rents. Plaintiffs' proposed interpretation of Section 1.8 would ameliorate such problems to some extent in that HUD could not bring a retroactive suit to challenge an AAAF-based adjustment that HUD previously had granted.

Further, allowing HUD to bring retroactive suits also would seem at odds with the detailed procedures established in Section 1.8. Section 1.8 obligates HUD to calculate AAAFs annually and then to adjust rents based on the applicable AAAFs on the contract anniversary date unless HUD previously determines that application of the AAAFs would result in a material difference. If HUD could bring retroactive suits, then the mandate to adjust rents yearly would be rendered essentially meaningless in that HUD could willfully ignore the mandate without any significant disadvantage. HUD could refuse to apply the applicable AAAFs, wait to be sued, and then, if sued, for the first time conduct a comparability study and based on that study justify its failure to grant an AAAF-based adjustment.

Also militating against the availability of retroactive suits is HUD's contemporaneous interpretation of the HAP contracts. *See Julius Goldman's Egg City v. United States*, 697 F.2d 1051, 1058 (Fed.Cir.) ("A principle of contract interpretation is that the contract must be interpreted in accordance with the parties' understanding as shown by their conduct before the controversy."), *cert. denied*, 464 U.S. 814, 104 S.Ct. 68, 78 L.Ed.2d 83 (1983). In an internal HUD memorandum dated August 20, 1980, a HUD official rejected diminishing rents in current years to make up for prior-year AAAF-based adjustments that were subsequently determined to result in rents that materially exceeded rents charged for comparable unassisted units. The official stated: "In our opinion the [HAP] agreement ... precludes such retroactive correction by HUD."

In addition to being at odds with the wording of Section 1.8 and HUD's earlier interpretation of the HAP contracts, retroactive suits would have the undesired effect of producing a business relationship between landlords and tenants that is far different from the relationship typically found in the marketplace. Ordinarily, leases between landlords and tenants state with specificity the amount of rent to be paid over the course of the lease, either as a fixed number or by reference to a readily available number such as a cost of living index. This definitiveness gives the landlord reasonable predictability as to the amount of rent the landlord will receive and thereby enables the landlord to make reasonable business decisions in the operation of its property.[4] If, however, HUD is permitted to perform retroactive comparability studies and bring retroactive suits to recover rents paid years previously, then landlords would be deprived of this desirable predictability.[5] By establishing a rent adjustment limitation based on rents charged for comparable units, Section 1.8(d) attempts to bring market realism into the HUD-project owner relationship. *See National Leased Housing Ass'n v. United States*, 32 Fed.Cl. 454, 466 (1994). To interpret Section 1.8(d) in a way that creates long-lasting uncertainty as to rent obligations would seem fundamentally inconsistent with this search for a more market-oriented approach.

Finally, the adverse effects of retroactive suits on project owners cannot be justified as necessary to further HUD's reasonable expectations and legitimate interests. As this court explained in *National Leased Housing Ass'n*, 32 Fed.Cl. at 466, the overall limitation in Section 1.8(d) is consistent with the parties' reasonable expectations because HUD reasonably expects its subsidized tenants to pay, and the landlord reasonably expects to receive, rents not materially different from market rents charged for comparable unassisted units. HUD, however, does not need to resort to retroactive suits to ensure that contract rents are not materially different from market rents. Under this court's interpretation of Section 1.8(d), if HUD suspects that the grant of an AAAF-based adjustment on the contract anniversary date may materially differ from market

---

**4.** The August 28, 1980, memorandum in which the HUD official rejected retroactive adjustments states:

> To cut back on the size of one year's adjustment to correct for previous, possibly improper, adjustments would not be reasonable. The owner relies on the annual adjustment each year and makes assumptions about its income and expenses based on the approved rents. Based on these assumptions, the owner enters into financial commitments necessary for running the project, maintaining it, and making capital improvements. It would be inappropriate for HUD to be able to adjust for these previous rent increases by minimizing or reducing current rent adjustments, thereby jeopardizing the owner's ability to operate the project on a financially sound basis. In our opinion, the agreement between the parties

under the Contract precludes such retroactive correction by HUD.

**5.** When, as here, HUD simply refuses to make an AAAF-based adjustment, the landlord would not know the amount of rent to which it is entitled until after it sues HUD, HUD performs and presents to the court a comparability study, and the court rules on that study. The landlord could not secure certainty as to the outcome of such litigation by conducting its own comparability study because Section 1.8(d) obligates the court to give deference to HUD's comparability study ("material differences ... *as determined by the Government*" (emphasis added)). *See Alpine Ridge*, 508 U.S. at 21, 113 S.Ct. at 1904; *National Leased Housing Ass'n*, 32 Fed.Cl. at 763; *Park Village*, 32 Fed.Cl. at 446–47.

rents at that time, HUD may protect its interests by conducting a comparability study prior to that date and modifying the AAAF-based adjustment accordingly.[6]

In this regard, Congress appears to share this court's conclusion that HUD's interests are adequately protected by HUD having to make a determination as to material differences prior to the contract anniversary date. In 1988, after Congress became aware of HUD's refusal to grant AAAF-based adjustments without first making a determination as to material differences, Congress amended the statute upon which the HAP contracts are based to provide:

> If the Secretary or appropriate State agency does not complete and submit to the project owner a comparability study not later than 60 days before the anniversary date of the assistance contract under this section, the [AAAF] shall be applied.

*Housing and Community Development Act of 1987*, Pub.L. No. 100–242, § 142(c)(2), 101 Stat. 1815, 1850 (1988) (codified at 42 U.S.C. 1437f(c)(2)(C)).[7]

Hence, both the wording of Section 1.8(d) and the business context in which it was written support an interpretation that obligates HUD to "fish or cut bait" by the anniversary date of the contract. HUD must determine by that date whether it will apply the AAAFs directly or instead modify the AAAF-based adjustment so as to eliminate any material difference. If, prior to the contract anniversary date, HUD does not make a determination as to a material difference, HUD must grant the AAAF-based adjustment and thereafter may not dispute plaintiff's entitlement to that adjustment on the ground that it resulted in a material difference. Based on these conclusions, HUD was obligated to grant plaintiffs an AAAF-based adjustment for the years 1984–1986, HUD's failure to do so constituted a breach of contract, and HUD may not now conduct comparability studies to demonstrate that the grant of AAAF-based adjustments for these years would have resulted in material differences.

## V.

During oral argument, the parties and the court discussed the other issues raised in the parties' cross-motions. For the reasons explained by the court, defendant's motion for summary judgment on the issue of equitable estoppel is denied. Defendant has not demonstrated the absence of any material issue of fact with respect to the requirements of equitable estoppel as summarized in *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041–44 (Fed.Cir.1992) (en banc). The parties shall discuss the most efficient way to resolve the remaining issues in this case, including equitable estoppel, the calculation of damages for the years 1984–1986, and the existence of a breach of contract and any resulting damages for years beyond 1986. On or before August 30, 1996, the parties shall file a joint status report proposing a schedule for further proceedings in this action.

IT IS SO ORDERED.

---

**6.** Indeed, conducting a comparability study by the contract anniversary date could prove more efficient than conducting a study years later in that it would seem easier and less costly to obtain an accurate assessment of rents charged for comparable unassisted units at the time those rents are being charged, rather than to attempt to reconstruct past rents from years ago.

**7.** Thus, the dispute between the parties' respective interpretations comes down to the date by which defendant must act to avoid an obligation to grant an AAAF-based adjustment. This court and plaintiffs conclude that HUD must make a determination as to any material difference by the contract anniversary date and defendant concludes that HUD may make such a determination at any time before the statute of limitations for instituting a retroactive suit has run.