## OAKBROOK VILLAGE ASSOCIATES

v.

Hon. Henry G. CISNEROS, in his official capacity as Secretary, United States Department of Housing and Urban Development, and the United States Department of Housing and Urban Development.

No. CIV. A. 96–3795.

United States District Court,
E.D. Louisiana.

Sept. 30, 1998.

Miles P. Clements, Frilot, Partridge, Kohnke & Clements, New Orleans, LA, for Plaintiffs.

Thomas Landers Watson, U.S. Atty's Office, New Orleans, LA, for Defendants.

## ORDER AND REASONS

MENTZ, District Judge.

This suit arises from the December 21, 1995 non-judicial foreclosure sale of property known as the Oakbrook Village Apartments located in New Orleans, Louisiana. Plaintiff Oakbrook Village Associates (Oakbrook) instituted this suit against the Secretary of Housing and Urban Development ("the Secretary") and the United States Department of Housing and Urban Development ("HUD") pursuant to the Multi–Family Foreclosure Act of 1981 ("the Act"), 12 U.S.C. § 3701, et seq.

The Act establishes a set of priorities for payment of proceeds from the foreclosure of multi-family mortgages assigned to HUD. 12 U.S.C. § 3712.[1] Oakbrook, as second mort-

---

1. Section 3712 provides:
   § 3712. Disposition of sale proceeds

   Money realized from a foreclosure sale shall be made available for obligation and expendi-

gagee, seeks alleged unsecured, surplus funds from foreclosure sale proceeds in accordance with priorities set forth in § 3712, as well as alleged unsecured funds in a property escrow account not included in the foreclosure accounting.

Oakbrook purchased the property in 1972. In connection with the purchase, Oakbrook entered into a Regulatory Agreement for Multi–Family Housing Projects under which HUD agreed to insure the mortgage and note covering the property and Oakbrook undertook specific duties for operation and management of the property.[2] The Regulatory Agreement was made part of the mortgage and recorded with the mortgage.

Oakbrook sold the property in 1989 to New Orleans East Development Association, which subsequently defaulted on its loan from Crossland Federal Savings Bank in 1994. The Secretary held the first mortgage on the property by virtue of an assignment from Crossland.[3] Oakbrook held a second mortgage, subordinate and subject to the first mortgage and Regulatory Agreement. *See* Second Mortgage by New Orleans East Development Associates to Oakbrook Village Associates, ¶ 15.

During the period that HUD had possession of the property until the foreclosure sale, HUD expended $3,496,083.36 for operational costs, maintenance, and repairs on the property. At the foreclosure sale on December 21, 1995, HUD, the only bidder, bid the entire unpaid mortgage principal and interest, together with the amount it expended for operations, repairs and maintenance, plus interest, service charges and taxes, or a total of $11,621,712.69. There is no dispute that HUD's first mortgage had priority over Oakbrook's second mortgage.

Oakbrook contends that the entire $3,496,083.36 that HUD spent while it was in possession of the property was not necessary, and therefore, pursuant to § 3712 that sum was unsecured. *See* 12 U.S.C. § 3712(6) (the principal balance secured by the mortgage includes expenditures for "necessary protection, preservation, and repair of the security property."). Oakbrook contends that these unsecured funds which were accounted for in HUD's bid, constitute surplus sale proceeds and should have been applied to satisfy Oakbrook's second mortgage in the amount of $1,785,064.00 plus interest in accordance with priorities set forth in § 3712.

Oakbrook alternatively seeks $48,997.19, representing HUD's expenditures in excess of 50% of the outstanding principal balance

---

ture -

(1) first to cover the costs of foreclosure provided for in section 3711 of this title;
(2) then to pay valid tax liens or assessments prior to the mortgage;
(3) then to pay any liens recorded prior to the recording of the mortgage which are required to be paid in conformity with the terms of sale in the notice of default and foreclosure sale;
(4) then to service charges and advancements for taxes, assessments, and property insurance premiums;
(5) then to interest;
(6) then to the principal balance secured by the mortgage (including expenditures for the necessary protection, preservation, and repair of the security property as authorized under the mortgage agreement and interest thereon if provided for in the mortgage agreement); and
(7) then to late charges.

Any surplus after payment of the foregoing shall be paid to holders of liens recorded after the mortgage and then to the appropriate mortgagor. If the person to whom such surplus is to be paid cannot be located, or if the surplus available is insufficient to pay all claimants and the claimants cannot agree on the allocation of the surplus, or if any person claiming an interest in the mortgage proceeds does not agree that some or all of the sale proceeds should be paid to a claimant as provided in this section, that part of the sale proceeds in question may be deposited by the foreclosure commissioner with an appropriate official or court authorized under law to receive disputed funds in such circumstances. If such a procedure for the deposit of disputed funds is not available, and the foreclosure commissioner files a bill of interpleader or is sued as a stakeholder to determine entitlement to such funds, the foreclosure commissioner's necessary costs in taking or defending such action shall be deductible from the disputed funds.

**2.** Under the Mortgage Insurance Program, 12 U.S.C. § 1707–1715 (1980), the Secretary is authorized to insure mortgages on multi-family rental housing projects for low and moderate income families.

**3.** The Regulatory Agreement continued to be applicable to Oakbrook's second mortgage.

at the time of foreclosure. Oakbrook's position is based on provisions in HUD's First Mortgage Agreement limiting HUD's security for expenditures for preservation and maintenance.[4]

Oakbrook's third claim is that escrow funds of "at least" $112,602.65 paid in accordance with the Regulatory Agreement should have been applied to reduce the outstanding indebtedness on HUD's first mortgage, and therefore, HUD's bid contains a $112,602.65 surplus.

Defendants have moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim upon which relief can be granted. The court addresses first the threshold issue of jurisdiction.

Neither party disputes that Oakbrook's complaint which names the Secretary and HUD is in fact a suit against the United States. The United States is immune from suit unless there has been an unequivocal waiver of immunity. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992). Thus, even though Oakbrook's claims under § 3712 clearly present a federal question in support of subject matter jurisdiction under 28 U.S.C. § 1331, waiver of sovereign immunity is a prerequisite to assuming jurisdiction in this case. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941).

Oakbrook argues that both the Tucker Act, 28 U.S.C § 1491, and the Administrative Procedure Act (APA), 5 U.S.C. § 702, waive sovereign immunity for its claims in this case. Both acts provide for waiver of sovereign immunity for particular types of actions. The Tucker Act grants a waiver for suits in the United States Court of Federal Claims;[5] whereas the APA waives sovereign immunity for suits in the federal district courts. Thus, this court has authority to grant relief against the United States only if Oakbrook's claims fall within the ambit of the APA.

The APA contains a waiver of sovereign immunity for suits in the federal district courts for legal wrongs caused by agency action seeking relief "other than money damages." 5 U.S.C. § 702.[6] District court re-

---

4. The mortgage provides in relevant part:
   Now in order to secure the full and punctual payment of the said Promissory Note according to the terms and tenor thereof and, exclusive of said sum and in addition thereto, up to but not exceeding fifty (50) percent of the principal amount of said Note, any sums which the Mortgagee herein, its successors and assigns, may advance or expend during the life of this Mortgage ... for the protection and preservation of its Mortgage in any manner ....
   The provision clearly limits security to "50% of the principal amount of said Note," not to 50% of the "outstanding principal balance at the time of foreclosure," as alleged by Oakbrook.

5. The Tucker Act, 28 U.S.C. § 1491(a)(1) provides in relevant part:
   The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.
   The "Little" Tucker Act, 28 U.S.C. § 1346(a)(2) grants concurrent jurisdiction to the district courts for such claims not exceeding $10,000.00 in value. This court clearly does not have jurisdiction over this suit under the Little Tucker Act

because Oakbrook seeks sums in excess of $10,000.00 in its complaint.

6. Section 702 provides:
   A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

view of agency action is precluded, however, if there is another court available which provides an adequate remedy to redress the alleged grievance. *Id.* § 704.[7] Accordingly, if the claim raised can be adequately addressed in the Court of Claims, the APA's waiver of sovereign immunity is not available.

■ Both of these obstacles to waiver of sovereign immunity under the APA are present in this case. First, Oakbrook seeks monetary damages. Oakbrook's complaint requests that it be paid the amount of its second mortgage, $1,785,064.00, plus interest, out of HUD's alleged unsecured foreclosure sale proceeds. While Oakbrook argues that it seeks only equitable relief, monetary relief is clearly the primary objective of this suit and the direct consequence if Oakbrook's claims are successful. Oakbrook seeks to have HUD pay the entirety of its second mortgage—with interest, over two million dollars. The cancellation of an indebtedness to Oakbrook is a form of money damages. *Cf. Brazos Elec. Power Coop. v. United States*, 144 F.3d 784, 786 (Fed.Cir.1998) (crediting money toward cancellation of a debt owed by the plaintiff to the federal government "is just as much a form of monetary damages for purposes of the Tucker Act as the direct payment by the federal government of conventional monetary damages"); *Colorado Dep't of Highways v. United States Dep't of Transp.*, 840 F.2d 753, 756 (a challenge to the accounting method used to calculate federal reimbursement of highway construction costs is an action for monetary damages).

■ Second, Oakbrook has an adequate remedy in the Court of Claims through the Tucker Act. The Tucker Act waives sovereign immunity for non-tort claims seeking money damages in excess of $10,000 and which are founded upon one of four alternative authorities: (1) the Constitution; (2) any Act of Congress; (3) any executive department regulation; or (4) any express or implied contract with the United States.

As stated, Oakbrook's claim is for money damages in excess of $10,000 against the United States. Oakbrook has asserted both contract based claims and claims based on federal statutes and regulations.

Oakbrook and HUD entered into the Regulatory Agreement which allegedly controls HUD's obligation to credit or refund escrow funds. The Regulatory Agreement incorporates the provisions of the first mortgage which is the contractual authority for Oakbrook's claim that HUD was only partially secured for its expenditures for preservation of the property. Oakbrook was the original mortgagor and HUD is the assignee of the first mortgagee. Oakbrook's claim that HUD's expenditures were not necessary and therefore not secured by the first mortgage, arise out of Oakbrook's contractual relationship with HUD. *See Lisbon Square v. United States*, 856 F.Supp. 482, 490–493 (E.D.Wis. 1994) (Court of Federal Claims has jurisdiction over claims by mortgagor against HUD and foreclosure commissioner based on violations of Multi–Family Mortgage Foreclosure Act.)

Oakbrook's claims also satisfy the Tucker Act criterion of a claim founded on "any Act of Congress." Oakbrook's suit seeks surplus funds from the foreclosure pursuant to The Multi–Family Foreclosure Act of 1981, 12 U.S.C. § 3701, *et seq.* The court must ask whether the statute can be fairly interpreted as mandating compensation by the federal government for the damage sustained. *See Bowen v. Massachusetts*, 487 U.S. 879, 906 n. 42, 108 S.Ct. 2722, 2738 n. 42, 101 L.Ed.2d 749 (1988); *Amoco Production Co. v. Hodel*, 815 F.2d 352, 360 (5th Cir.1987).

Section 3712 creates a substantive monetary right enforceable against the federal government. The statute requires payment of any "surplus funds" to lienholders like Oakbrook. The Secretary is the guarantor for damages based upon the default of the foreclosure commissioner. 12 U.S.C. § 3704. According to Oakbrook, surplus funds exist because HUD's bid was improperly credited with unsecured expenditures. *Cf. Hodel*, 815

---

7. Section 704 provides in relevant part:
   Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.

734

F.2d at 360 (statute creating right to request Secretary to refund excess lease payments creates a right to monetary relief against the government). Accordingly, the court finds that an adequate remedy exists in the Court of Federal Claims.

Neither *Katz v. Cisneros,* 16 F.3d 1204 (Fed.Cir.1994) nor *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) are authority for finding district court jurisdiction in this case. Privity of contract was absent in both of those cases. *Bowen* also is readily distinguishable on the unique nature of the claim asserted. In *Bowen,* the State of Massachusetts challenged a decision by the Department of Health and Human Services disallowing payment of federal Medicaid funds. The State sought prospective confirmation of its eligibility for future assistance, declaratory and injunctive relief. Unlike the case at bar, the State's claim was not to redress a personal financial loss of the state. Any monies paid to the state would be to provide services to third parties and would be subject to ongoing federal fiscal controls. For these reasons, the holding in *Bowen* that the State's claim was not one for money damages does not establish a widely applicable general rule. *Bowen's* rule is properly limited to similar challenges to federal disallowance of aid decisions. *See Brighton Village Assoc. v. United States,* 52 F.3d 1056, 1059 (Fed.Cir.1995) (Section 8 suit distinguishing *Bowen* and *Katz* ).

The only applicable waiver of sovereign immunity in this case is found in the Tucker Act, 28 U.S.C. § 1491(a)(1). Jurisdiction is therefore exclusively in the Court of Federal Claims. In the interest of justice, this court will transfer, rather than dismiss, Oakbrook's suit to the Court of Federal Clams as authorized by 28 U.S.C. § 1631.

Accordingly,

IT IS ORDERED that the United States of America's Motion to Dismiss is **GRANTED** for lack of jurisdiction. This suit is hereby **TRANSFERRED** to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.