**KENNEDY HEIGHTS APARTMENTS, LTD. I and Wilshire–Washington Heights Limited Partnership, Plaintiffs,**

v.

**Duncan McMILLAN, Defendant.**

**No. CIV. 3:98–CV–2324–BC.**

United States District Court, N.D. Texas, Dallas Division.

Oct. 18, 1999.

John Randall Riddle, Strasburger & Price, Dallas, TX, for Plaintiffs.

D. Shane Read, U.S. Attorney's Office, Department of Justice, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

BOYLE, United States Magistrate Judge.

Before the Court are Defendant's **Supplemental Brief in Support of Motion for Summary Judgment,** filed July 13, 1999 and **Plaintiffs' Brief Regarding Subject Matter Jurisdiction.** At issue is whether this Court or the United States Court of Federal Claims ("Claims Court") has jurisdiction to hear this dispute. Having considered the pleadings, the evidence submitted and the relevant authority, the Court concludes that subject matter jurisdiction over this case properly rests with the Claims Court and, accordingly, **ORDERS** this case **TRANSFERRED** to the Claims Court for the reasons that follow.

## I. Background

This case involves competing claims to surplus sale proceeds from a Department of Housing and Urban Development ("HUD") foreclosure sale of Plaintiffs' properties. The background facts are undisputed. On August 3, 1998, Defendant Duncan McMillan ("McMillan") accepted an appointment from HUD to act as Foreclosure Commissioner for purposes of foreclosing on Plaintiffs' properties [1] under the Multifamily Mortgage Foreclosure Act of 1981, 12 U.S.C. § 3701 *et seq.* ("the Act"). Pursuant to his authority under the Act and applicable regulations,[2] McMillan sold the properties at a foreclosure sale to the successful bidders on August 28, 1998. Sale proceeds for Kennedy Heights Apartments and Washington Heights Apartments totaled $1,120,000.00 and $1,420,000.00, respectively.

Following the foreclosure sales, one of Plaintiffs' attorneys contacted McMillan regarding possible excess sale proceeds for the properties. Plaintiffs believed that the properties were sold for well in excess of the outstanding mortgage and other debts against the properties, thus creating a surplus in the amount of $146,798.69 for Kennedy Heights Apartments and $173,521.05 for Washington Heights Apartments. Consequently, Plaintiffs contended that they, as mortgagors, were entitled to the surplus proceeds under the Act and regulations.[3] HUD, however, informed McMil-

---

1. Plaintiffs' properties are Kennedy Heights Apartments and Washington Heights Apartments and are referred to as "the properties" when necessary.

2. The applicable regulations enacted by HUD are codified in Appendix A of 24 C.F.R. Part 27. These regulations specify the proper procedure to be utilized for nonjudicial foreclosures of multifamily mortgages.

3. Section 11 of Appendix A of the regulations gives a priority listing with regard to the disposition of sale proceeds following foreclosure sales under the Act. Section 11 is substantially similar to 12 U.S.C. § 3712 which also governs the disposition of such proceeds. Section 11 reads as follows:

   11. Disposition of Sale Proceeds

   (a) The proceeds of the foreclosure sale shall be used in the following order:

   (1) To pay the costs listed in section 10 of this guide;

lan that Plaintiffs' indebtedness and HUD's costs and expenses for each the properties exceeded the amount of the respective sale proceeds. As such, HUD instructed McMillan to tender all proceeds to it. HUD claims to have made necessary expenditures to preserve and/or repair the properties while it was mortgagee-in-possession. HUD thus concluded that, under the Act and Section 11(6) of the regulations, it had priority to recoup these expenses before any proceeds were paid to the Plaintiffs–Mortgagors. See 24 C.F.R. pt. 27, App. A § 11(6) (1996).

Prior to McMillan's actual receipt of any sale proceeds, Plaintiffs filed this lawsuit on September 25, 1998, in the 162nd Judicial District Court of Dallas, County, Texas, and obtained a temporary restraining order prohibiting McMillan from distributing the alleged surplus proceeds to HUD. The sales of the properties were closed on September 30, 1998, and October 1, 1998, at which time McMillan directed the purchasers to issue separate checks for the alleged surplus proceeds; i.e., $146,798.69 for Kennedy Heights Apartments and $173,521.05 for Washington Heights Apartments. Thereafter, pursuant to the restraining order and his authority under the Act and regulations, McMillan deposited the disputed proceeds into the Registry of the Dallas County District Court.[4]

■ On October 1, 1998, McMillan removed this case to federal court alleging, *inter alia,* that this suit is against the United States since he was acting as a designated agent or officer of HUD. On April 7, 1999, McMillan filed a motion for summary judgment to which the Plaintiffs responded on May 28, 1999. Neither party addressed this Court's subject matter jurisdiction. In view of the Claims Court's potential jurisdiction over this action, the parties were ordered to submit supplemental briefing on the jurisdiction issue.[5]

In his supplemental brief, McMillan contends that the Claims Court has exclusive jurisdiction over this case because Plaintiffs sued the United States (HUD) based on a federal statute and/or regulation, and they seek money damages in excess of $10,000. Therefore, McMillan concludes

(2) To pay valid tax liens or assessments on the security property which have priority over the foreclosed mortgage;

(3) To pay liens recorded prior to the recording of the foreclosed mortgage which are required to be paid in conformity with the Notice of Default and foreclosure Sale;

(4) To pay service charges and advancements for taxes, assessments and property insurance premiums which were made under the terms of the foreclosed mortgage;

(5) To pay the interest due under the mortgage debt;

(6) To pay the unpaid principal balance secured by the mortgage (including expenditures for the necessary protection, preservation and repair of the security property as authorized under the mortgage agreement and interest thereon if provided in the mortgage agreement);

(7) To pay any late charges;

(8) To pay any liens recorded after the foreclosed mortgage; and

(9) To pay the surplus to the mortgagor. 24 C.F.R. pt. 27, App. A § 11 (1996).

4. Section 11(c) of Appendix A of the regulations authorized McMillan to deposit the proceeds into the registry of the court. It provides in relevant part:

"(c) If the mortgagor entitled to the surplus cannot be located, or if the surplus available is insufficient to pay all claimants and the claimants to the surplus cannot agree on its disposition, or if a claimant to the proceeds of the sale disagrees with the [foreclosure] commissioner's proposed disposition of the proceeds, the commissioner may deposit the disputed funds with a legally authorized official or court." 24 C.F.R. pt. 27, App. A § 11 (1996).

5. A district court must examine the basis of its subject matter jurisdiction when it appears at all questionable. *Odeco Oil & Gas Co. v. Bonnette,* 4 F.3d 401, 403 & n. 2 (5th Cir. 1993), *cert. denied,* 511 U.S. 1004, 114 S.Ct. 1370, 128 L.Ed.2d 47 (1994)(citing *Giannakos v. M/V Bravo Trader,* 762 F.2d 1295, 1297 (5th Cir.1985)("United States District Courts and Courts of Appeals have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking.").

that each element of 28 U.S.C. § 1491(a)(1) necessary for Tucker Act jurisdiction in the Claims Court is satisfied. Def.'s Supplemental Br. at 4, 6–7. Plaintiffs, on the other hand, maintain that jurisdiction rests with this Court because: (1) this is not a suit against the HUD; and (2) they are not seeking relief in the form of "money damages" under the Tucker Act. Pls.' Br. Regarding Subject Matter Jurisdiction at 5, 6–12.

The Court now turns to address the parties' contentions in the context of the relevant authority.

## II.  Analysis

### A.  United States as Defendant

Plaintiffs contend that this lawsuit is not against HUD, but against McMillan, "to prevent him from violating the statutory and regulatory scheme" pertaining to the alleged surplus foreclosure proceeds and to obtain the excess proceeds from McMillan. Pl.'s Br. Regarding Subject Matter Jurisdiction at 5. For the reasons set forth below, this Court finds that, despite naming McMillan as the defendant in this case, Plaintiffs seek relief from United States and this is, consequently, an action against the sovereign.

■ Plaintiffs specifically state in their briefing that they do not seek to

impose personal liability on McMillan, instead, they urge that they seek to prevent McMillan from violating his lawful duties as Foreclosure Commissioner. Pl.'s Br. Regarding Subject Matter Jurisdiction at 5. McMillan is, thus, being sued for actions taken in his official capacity as Foreclosure Commissioner. Moreover, it is only in his official capacity that McMillan would have the authority to provide Plaintiffs the relief they seek in this case—payment of the surplus proceeds. Because this action is based on acts taken by McMillan in his official capacity within the scope of his official employment, it is in essence a suit against the sovereign, which, absent a waiver, is barred by sovereign immunity. *Unimex, Inc. v. United States*, 594 F.2d 1060, 1061 (5th Cir.1979); *Lisbon Square v. United States*, 856 F.Supp. 482, 490–91 (E.D.Wis.1994).[6]

■ Additionally, "[i]t is not necessary that the United States be named as a party; an action against a federal agency or official will be treated as an action against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, ... or if the effect of the judgment would be to restrain the Government from acting, or compel it to act.'" *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 359 (5th Cir.1987), *cert. denied*, 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932

---

**6.** Two exceptions apply to this principle that sovereign immunity bars this action against McMillan for actions taken in his official capacity. First, sovereign immunity does not apply if the actions by McMillan in failing to pay the surplus proceeds to Plaintiffs and, instead, depositing them in the registry of the court were beyond the authority granted him by statute, and, secondly, if his actions in this regard, although authorized by statute, were unconstitutional. *See Southern Sog, Inc., v. Roland*, 644 F.2d 376, 380 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–90, 69 S.Ct. 1457, 1461–1462, 93 L.Ed. 1628 (1949))(other citation omitted).

Plaintiffs do not dispute the lawfulness of McMillan's actions in depositing the disputed funds into the registry of the court. Pl.'s Br. Regarding Subject Matter Jurisdiction at 5(describing the deposit as "expressly autho-

rized by statute and regulation"). Although, they argue that McMillan violated "the express terms of the Act and the Regulations" when he paid the foreclosure (non-surplus) proceeds directly to HUD, they clarify that "[t]his action now simply involves the appropriate disposition of the funds which the Foreclosure Commissioner chose to tender into the registry of the court...."Id. Because this action does not challenge the lawfulness or constitutionality of the acts which form the basis of this suit, this Court finds that neither of the two foregoing exceptions to sovereign immunity apply. Consequently, to maintain this suit, Plaintiffs must demonstrate that the sovereign has consented to suit under the circumstances which attend this case. *See generally, Lisbon Square v. United States*, 856 F.Supp. 482, 490–91 (E.D.Wis.1994).

(1988) (citations omitted). A favorable judgment in this case would entitle Plaintiffs to funds otherwise payable to the federal government. Furthermore, in their petition, Plaintiffs request that the Court compel McMillan to pay the surplus proceeds to them, an action he is only authorized to undertake as a government agent in his official capacity as Foreclosure Commissioner for HUD.

For the foregoing reasons, the Court finds that this action lies against the United States and, accordingly, that Plaintiffs must surmount the sovereign immunity barrier to proceed against the Defendant. With this in mind, the Court now turns to the two statutory waivers of sovereign immunity at the crux of the parties' dispute regarding this Court's jurisdiction.

## B. Waivers of Sovereign Immunity

■ The United States cannot be sued without an express waiver of its sovereign immunity. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992)(other citations omitted). Both the Administrative procedure Act ("APA"), 5 U.S.C. § 702, and the Tucker Act, 28 U.S.C. § 1491, operate as waivers of sovereign immunity under certain circumstances. Plaintiffs, relying principally on *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749, contend that the APA permits this suit to proceed in this Court. Defendant, disputes the APA's applicability to this case and urges that the Tucker Act supplies the sole jurisdictional basis for this suit and, as such, compels a trans-fer of the case to Claims Court. Resolution of this issue requires an examination of the terms of each statute as interpreted in the relevant case authority.

### 1. Tucker Act

■ The Tucker Act[7] provides a waiver of sovereign immunity for suits in the United States Court of Federal Claims. 28 U.S.C. § 1491(a)(1); *Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed.Cir.1994). Described by the Federal Circuit, in *Brazos Elec. Power Coop., Inc. v. United States*, 144 F.3d 784, 787 (Fed.Cir.1998), "[t]he Tucker Act sets forth a number of prerequisites for Court of Federal Claims jurisdiction. These include that the action be 'a claim against the United States,' that the claim is 'founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States,' and that the damages claim 'not sound[ ] in tort.' " *Brazos Elec. Power Coop., Inc. v. United States*, 144 F.3d 784, 787 (Fed.Cir.1998). Jurisdiction is exclusive in the Claims Court under the Tucker Act for claims in excess of $ 10,-000.00.[8] *Kanemoto*, 41 F.3d at 644. The "Little Tucker Act" provides concurrent jurisdiction to the federal district courts and the Claims Court for claims not exceeding $10,000.00 in value. 28 U.S.C. § 1346(a)(2).

### 2. APA

■ The APA[9] provides a waiver of sovereign immunity for suits in the federal

---

**7.** The Tucker Act provides in relevant part: "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1994 & Supp. I 1999).

**8.** Although the term "money damages" is found nowhere in the Tucker Act, courts have judicially interpreted the Tucker Act as vesting jurisdiction in the Claims Court only for cases involving claims for money damages or monetary relief. *Kanemoto*, 41 F.3d at 645. However, as the Court will explain, the term "money damages" as applied in Tucker Act jurisprudence has a different meaning than the term "money damages" which is found in § 702 of the APA. Such distinction is significant in this case.

**9.** Section 702 of the APA provides in relevant part:

district court involving claims against the government based on unlawful agency actions. 5 U.S.C. § 702 (1996); *See generally Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). However, the APA contains two potential obstacles to a plaintiff's claim against the government. *Brazos,* 144 F.3d at 786; *Kanemoto,* 41 F.3d at 644. First, the government's immunity is waived only for actions that seek relief "other than money damages." 5 U.S.C. § 702 (1996); *Brazos,* 144 F.3d at 786. Second, district court review of agency action is prohibited if the plaintiff can receive an adequate remedy in another court.[10] 5 U.S.C. § 704 (1996); 144 F.3d at 786.

## C. Tucker Act or APA?—The Parties' Arguments

As mentioned, the Defendant contends that the Tucker Act applies to Plaintiffs' claims and mandates a transfer to Claims Court. And Plaintiffs rely upon the APA as the basis for jurisdiction in this Court. More precisely, the parties' dispute over whether the APA or the Tucker Act constitutes the appropriate jurisdictional vehicle for this case centers upon the Plaintiffs' contention that they are not seeking "money damages" under the Tucker Act as that term was interpreted by the Supreme Court in *Bowen, supra.* Pls.' Br. Regarding Subject Matter Jurisdiction at 17.

In *Bowen,* the Commonwealth of Massachusetts brought a suit challenging a final order of the Secretary of Health and Human Services refusing to reimburse the state for certain expenditures through the Medicaid program. *Kanemoto,* 41 F.3d at 645 (citing *Bowen,* 487 U.S. at 885–87, 108 S.Ct. at 2727–29). Under the Medicaid

program, the federal government made quarterly advance payments to the state in anticipation of future reimbursable costs paid by the state in its programs. *Id.* (citing *Bowen* 487 U.S. at 883–85, 108 S.Ct. at 2726–27). After the Secretary notified Massachusetts that some of its costs had been disallowed, the state sued the Secretary in federal district court seeking declaratory and injunctive relief setting aside the Secretary's decision. *Id.* (citing *Bowen* at 887, 108 S.Ct. at 2728). The Secretary challenged the district court's jurisdiction to hear the case, contending that the Tucker Act provided exclusive jurisdiction over the case in the Claims Court. *Id.* (citing *Bowen* at 890, 108 S.Ct. at 2730).

The Supreme Court concluded that the relief sought by the state was not "money damages" within the meaning of § 702 of the APA. *Id.* (citing *Bowen* at 900–01, 108 S.Ct. at 2735–36). The Court distinguished between "money damages," which is normally associated with compensation for damage sustained, and specific remedies, which do not act as compensation for damage sustained, but are designed to give a plaintiff that to which he is entitled. *Id.* (citing *Bowen* at 893–901, 108 S.Ct. at 2731–36). The Court concluded that Massachusetts did not seek money as compensation for damages, but rather it sought the specific remedy of enforcing the statutory mandate, which happened to one for the payment of money. *Id.* (citing *Bowen* at 900–01, 108 S.Ct. at 2735). Therefore, the state's claim fell within the scope of § 702's waiver of sovereign immunity for claims seeking relief other than money

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action ... is entitled to judicial review thereof. An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the

ground that it is against the United States ..." 5 U.S.C. § 702 (1996)(emphasis added).

**10.** Section 704 of the APA provides in relevant part:

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704 (1996).

damages. *Id.* (citing *Bowen* at 900–01, 108 S.Ct. at 2735–36).

Relying on *Bowen,* Plaintiffs here argue that this is not an action for money damages, rather, they are simply seeking funds to which the Act and regulations allegedly entitle them, not as compensation or as a substitute for damages suffered. *See Bowen,* 487 U.S. at 893–901, 108 S.Ct. at 2732–36.

The Defendant counters that "the primary objective of Plaintiffs' claims are not for equitable but monetary relief" because "Plaintiffs are disputing the costs incurred by HUD while it was in possession of the property prior to foreclosure and contend that there is a surplus of funds after the foreclosure sale to which they are entitled under 12 U.S.C. § 3712." Def.'s Supplemental Br. at 5–6 (citing *Oakbrook Village Assoc. v. Cisneros,* 25 F.Supp.2d 730, 733 (E.D.La.1998)). Accordingly, Defendant maintains that this case falls within the ambit of the Tucker Act.

### D. Tucker Act or APA?—The Court's Analysis

#### 1. Monetary Damages

A review of subsequent cases construing *Bowen's* interpretation of the term "money damages" under the APA suggests that Plaintiffs' reliance on that case as a limitation on the Tucker Act's jurisdiction over cases involving requests for relief that do not fall squarely within *Bowen's* definition of "money damages" is misplaced.

In *Kanemoto,* the plaintiffs sued the government under the Civil Liberties Act of 1988 which provided for $20,000 in restitution to qualified individuals of Japanese ancestry in recognition of the fundamental injustices committed against those individuals during World War II. 41 F.3d at 642–43. The government denied plaintiffs' claims for restitution finding that they were ineligible under the Civil Liberties Act. *Id.* The district court concluded that jurisdiction was not available in the Claims Court under the Tucker Act based on its

reasoning that the plaintiffs' claims sought redress payments under the statute, and were not claims for "money damages" under the Tucker Act. *Id.* at 646.

In reversing the district court's ruling, the Federal Circuit specifically noted that the Supreme Court in *Bowen* limited its interpretation of the term "money damages" to § 702 of the APA. *Id.* at 646. Therefore, the Federal Circuit reasoned, the district court incorrectly "imported" that interpretation from § 702 of the APA into the Tucker Act in determining whether plaintiffs sought a claim for "money damages" under the Tucker Act. *Id.* In so finding, the Federal Circuit quoted directly from *Bowen:*

> " ' . . . The jurisdiction of the [Court of Federal Claims], however, is not expressly limited to actions for "money damages," . . . whereas that term does define the limits of the exception to § 702.' " *Id.* (quoting *Bowen,* 487 U.S. at 900 n. 31, 108 S.Ct. at 2735 n. 31)(internal references omitted).

"Thus the [Supreme] Court recognized that the Tucker Act is not limited to suits for money damages. Indeed, *Bowen* reaffirmed the Court of Federal Claims' jurisdiction over causes of action for payment of money other than damages, including statutory causes of action . . ." *Id.* In rejecting *Bowen's* definition of money damages under the APA as a limitation of the type of damage claims cognizable under the Tucker Act, the *Kanemoto* court found that the statute at issue in that case constituted a "mandate for the payment of money over which the Court of Federal Claims [had] jurisdiction." *Id.* In finding jurisdiction improper under the APA, the court also relied on § 704's exception to the APA, finding, as distinguished from *Bowen,* that the plaintiffs in *Kanemoto* had an adequate remedy in the Claims Court. *Id.* at 645.

Other cases decided after *Bowen* reinforce this Court's view that the Supreme Court's definition of money damages for purposes of APA jurisdiction does not op-

erate as a limitation on the types of claims properly brought in Claims Court under the Tucker Act. *See Oakbrook Village Assoc. v. Cisneros,* 25 F.Supp.2d 730, 733 (E.D.La.1998)(where plaintiffs seeking, *inter alia,* surplus foreclosure proceeds from HUD foreclosure, the court found APA jurisdiction improper stating "Bowen's rule is properly limited to similar challenges to federal disallowance of aid decisions."); *Lulac East Park Place Trust v. U.S. Dep't. Of Hous. & Urban Dev.,* 32 F.Supp.2d 418, 421 (W.D.Tex.1998).

■ In this case, Plaintiffs' argument that this Court has jurisdiction over this case under the APA because their claim is not for "money damages" as interpreted by *Bowen,* is not persuasive in view of the foregoing authority and true nature of the relief they seek. As in *Oakbrook,* "monetary relief is the primary objective of this suit and the direct consequence if [Plaintiffs'] claims are successful." 25 F.Supp.2d at 733. Moreover, even if Plaintiffs' requested relief is similar to that deemed not "money damages" by the Supreme Court, *Bowen's* limitation on the type of claims constituting money damages was limited to cases relying on § 702 of APA for jurisdiction in federal district courts and does not extend to limit the type of relief permissible under the Tucker Act. *Kanemoto,* 41 F.3d at 646; *Oakbrook,* 25 F.Supp.2d at 734.

Finally, this Court is further persuaded that Claims Court jurisdiction is proper in this case because, as distinguished from *Bowen,* Plaintiffs in this case have an adequate remedy in Claims Court which, under § 704 of the APA, deprives this Court of jurisdiction under § 702 of the APA.

### 2. Adequate Remedy in Another Court

In further support of his argument that jurisdiction is improper in this Court under the APA, McMillan contends that Plaintiffs have an adequate remedy in the Claims Court under the Tucker Act. Def.'s Supplemental Br. at 7. The Court agrees.

■ Although the Claims Court is a court of limited jurisdiction that cannot grant equitable relief,[11] there is no significant prospective, equitable relief that Plaintiffs request in this case. In *Bowen* and *Katz v. Cisneros,* 16 F.3d 1204 (Fed. Cir.1994), the Supreme Court and Federal Circuit, respectively, concluded that the plaintiffs in those cases could not obtain an adequate remedy in the Claims Court because the relief requested would have a future impact on the ongoing, complex, and continuing relationship between the parties. *Bowen,* 487 U.S. at 905, 108 S.Ct. at 2737–38; *Katz,* 16 F.3d at 1209. Such prospective, equitable relief, the Courts held, could not be given by the Claims Court. *Id.*

■ In this case, unlike *Bowen* and *Katz,* a single, uncomplicated payment of money would provide Plaintiffs with an entirely adequate remedy. *See Brazos,* 144 F.3d at 788. No prospective relief is necessary, and there is no ongoing relationship between Plaintiffs and the federal government to monitor and referee. *Id.* Moreover, a " 'naked money judgment' " would provide all of Plaintiffs' requested relief. *See Kanemoto,* 41 F.3d at 645. The Claims Court under its Tucker Act jurisdiction can interpret the statute and render a judgment against the United States that will provide Plaintiffs with the entire relief they sought in the first place—the surplus foreclosure sale proceeds. *Id.* The fact that such a judgment would "compel" the government to pay the proceeds to Plaintiffs is not the type of "equitable relief" which is prohibited under the Tucker Act. *See Hodel,* 815 F.2d at 367 (" 'The Claims Court can issue declaratory relief that is "tied to and subordinate to a monetary award." ' ") (citations omitted); *See also Lulac East Park Place Trust v. U.S. Dep't. Of Hous. & Urban Dev.,* 32 F.Supp.2d 418, 421 (W.D.Tex.1998)("The

---

**11.** See *Bowen,* 487 U.S. at 905, 108 S.Ct. at 2737.

Tucker Act, as amended, permits the Court of Federal Claims to grant certain equitable relief ancillary to claims for money relief over which it has jurisdiction.").

As the Federal Circuit in *Kanemoto* explained:

> [t]he Supreme Court recognized [in *Bowen*] that there were times when a suit in the Court of Federal Claims under the Tucker Act for enforcement of a money mandating statute would be entirely adequate and that there were times when it would be inadequate. 'Litigation in the Claims Court can offer precisely the kind of "special and adequate review procedures" that are needed to remedy particular categories of past injuries or labors for which various federal statutes provide compensation.... Managing the relationships between the States and the Federal Government that occur over time and that involve constantly shifting balance sheets requires a different sort of review and relief process. The APA is tailored to fit the latter situation; the Tucker Act the former.' *Kanemoto*, 41 F.3d at 647 & n. 2 (citing. *Bowen*, 487 U.S. at 904 n. 39, 108 S.Ct. at 2737 n. 39) (internal reference omitted)."

 Finally, "[t]o determine whether one may bring [a claim], pursuant to Tucker Act jurisdiction, ... one must always ask ... whether the ... legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *See Bowen*, 487 U.S. at 907 & n. 42, 108 S.Ct. at 2739 & n. 42. The relevant portions of the Multifamily Mortgage Foreclosure Act and the regulations pertaining to disposition of foreclosure sale proceeds, provide that the surplus proceeds "shall be" used to pay to the mortgagor if any surplus exists. 12 U.S.C. § 3712 (1989); 24 C.F.R. pt. 27, App. A § 11 (1996). Such language can fairly be interpreted as mandating compensation from the government. *See Kanemoto*, 41 F.3d at 646–47; *Oakbrook*, 25 F.Supp.2d at 733. (interpreting § 3712).

In sum, this suit is properly brought under the Tucker Act because Plaintiffs seek monetary relief for which an adequate remedy exists in the Claims Court.

## III. Conclusion

Based on the foregoing, pursuant to 28 U.S.C. § 1631,[12] the Court **ORDERS** that this case be **TRANSFERRED** to the Court of Federal Claims.

**SO ORDERED.**

---

12. 28 U.S.C. § 1631 provides in relevant part: "Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ..." 28 U.S.C. § 1631 (1994).