James BLACK, Gerald Burwell, Martin Heischberg, Alex Kucer, Ronald Taylor, and Barbara Moore, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 02–343 C.

United States Court of Federal Claims.

March 27, 2003.

John T. Kennedy, Stuart, Florida, and Tilghman & Vieth, P.A., Miami, Florida, for the plaintiff.

Martin F. Hockey, Jr., Washington, D.C., with whom were David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, and Robert D. McCallum, Jr., Assistant Attorney General, for the defendant. Julia A. Rhodes, Personnel & Labor Law Staff, Office of Chief Counsel, Federal Aviation Administration, Washington, D.C., of counsel.

## OPINION

BUSH, Judge.

### BACKGROUND

For two days, beginning August 3, 1981, approximately 11,000 air traffic controllers, who were members of a union, the Professional Air Traffic Controllers Organization (PATCO), went on strike against the Federal Aviation Administration (FAA). As a result, in December 1981, President Ronald Reagan terminated all of the air traffic controllers who had gone on strike. Moreover, by memorandum dated December 9, 1981, to the Office of Personnel Management (OPM), President Reagan directed that the terminated air traffic controllers were indefinitely barred from employment by the FAA, although they could apply for other federal agency employment.

On August 12, 1993, President William Jefferson Clinton lifted the ban on FAA employment of former air traffic controllers terminated as a result of the 1981 strike. Specifically, President Clinton stated that " 'PATCO members should be eligible to apply, without preference, when there are opening[s] with the FAA.' " Def. Mot. to Dismiss at 3. Also on August 12, 1993, OPM, in a letter to the Department of Transportation (DOT), approved waivers of hiring restrictions on former air traffic controllers to " 'permit FAA to noncompetitively reinstate or transfer controllers who went on strike.' " Compl. at 9.

On October 4, 1993, OPM issued Bulletin 731–10 setting forth President Clinton's decision and directing former PATCO air traffic controller employment inquiries to the FAA's Office of Aviation Careers. Also during the fall of 1993, the FAA issued a Recruitment Notice, numbered 93–01. The Recruitment Notice was sent to and/or received by some, but not all, of the terminated PATCO air traffic controllers. The Recruitment Notice specified that the period for application for re-employment was from September 1, 1993 to October 15, 1993. As a result, numerous former air traffic controllers applied for new positions with the FAA but plaintiffs assert that only approximately 600 former PATCO air traffic controllers have been re-hired since 1993. Additional former air traffic controllers who had been fired as a result of the PATCO strike did not receive notice of their eligibility to re-apply for their former positions or did not receive timely notice. Several of the named plaintiffs have been considered for employment; however, with the exception of Martin Heischberg (who was not re-hired until 2001), they have not yet been selected for re-employment.

In 1999, plaintiffs filed a complaint in the United States District Court for the Southern District of Florida against the FAA. On January 24, 2001, the Clerk's office for the district court received the FAA's motion for summary judgment. In its motion, the FAA argued that: (1) the effective date of the Wendell H. Ford Aviation Investment and Reform Act (the Ford Act), codified at 49 U.S.C. § 40122, is April 1, 1996; (2) in light of the Ford Act, plaintiffs were required to comport with the Civil Service Reform Act (CSRA) pertaining to allegations of prohibited personnel practices; (3) under the CSRA, plaintiffs' complaints of prohibited personnel practices are not directly appealable to the Merit Systems Protection Board (MSPB), but, instead, plaintiffs are obliged to file those allegations with the Office of Special Counsel (OSC) pursuant to 5 U.S.C. §§ 1212 and 1214; and (4) according to 5 U.S.C. § 7703(b)(1), only if the OSC issues a letter declining to prosecute may plaintiffs file a complaint with a United States Court of Appeal or the United States Court of Federal Claims. Plaintiffs then filed their allegations of prohibited personnel practices with the OSC. On July 11, 2001, the OSC responded

to plaintiffs' complaint, declined to investigate the complaint, and stated that the OSC had no jurisdiction to investigate any alleged prohibited personnel practice by the FAA with the exception of whistleblower's claims.

On April 22, 2002, plaintiffs filed a Class Action Complaint for Declaratory Relief and Damages in this court. In their complaint, plaintiffs specifically state that the court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Plaintiffs rely upon 5 U.S.C. § 2302(b), 5 C.F.R. § 302.302, 5 U.S.C. § 330.705, 5 C.F.R. § 352.208, 5 U.S.C. § 210.102(8) and Section 347 of the 1996 DOT Appropriations Act as the bases for their claims. Plaintiffs also allege that this action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.[1]

Plaintiffs request that this court: (1) take jurisdiction over this action; (2) certify a class as defined by plaintiffs; (3) declare the actions of the FAA in connection with the re-employment of former PATCO controllers as prohibited personnel practices, in violation of the relied upon statutes and regulations; (4) order the FAA to re-employ former PATCO air traffic controllers in accordance with the aforementioned statutes and regulations and stay the hiring of non-PATCO air traffic controllers; (5) determine the damages suffered by plaintiffs and the class; (6) award plaintiffs their reasonable attorneys fees and costs; and (7) award such other relief as is necessary to effectuate the prompt re-employment of former PATCO air traffic controllers.

On July 26, 2002, defendant filed a motion to dismiss, arguing that the court must dismiss plaintiffs' complaint for lack of subject matter jurisdiction. In the alternative, defendant requests that this court dismiss portions of plaintiffs' complaint which are barred by the court's six-year statute of limitations,

as well as for failure to state a claim upon which relief can be granted. In their opposition brief, filed September 16, 2002, plaintiffs agreed with the government's assertion that claims asserted prior to April 22, 1996 are time-barred pursuant to 28 U.S.C. § 2501. Defendant filed its reply brief on September 26, 2002.

## DISCUSSION

### I. Motion to Dismiss Pursuant to 12(b)(1)

Jurisdiction may be challenged by the parties or by the court on its own at any time, and if jurisdiction is found lacking, this court must dismiss the action. Rule 12(h)(3) of the Rules of the Court of Federal Claims (RCFC). In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, the non-movant bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Cubic Def. Sys., Inc. v. United States*, 45 Fed.Cl. 239, 245 (1999) (citing *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir.1993); *Reynolds*, 846 F.2d at 748; *Maniere v. United States*, 31 Fed.Cl. 410, 413 (1994)). The court may make any factual findings necessary to adjudicate this motion, including find-

---

1. Plaintiffs define the class as:
   (1) Former PATCO air traffic controllers, or their survivors, who applied for FAA reemployment and who were not rehired;
   (2) Former PATCO air traffic controllers, or their survivors, who applied after the initial notifications of rehire eligibility and who have not been rehired;
   (3) Former PATCO air traffic controllers, or their survivors, who were rehired from

   groups (1) and (2) above, but whose rehire was delayed due to the FAA's prohibited employment practices; and
   (4) Former PATCO air traffic controllers, or their survivors, in group above who were not rehired at their former positions, grades and pays.

   Compl. at ¶ 28.

ings on matters not raised in the pleadings. *Indium Corp. of Am., Inc. v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).

## II. Tucker Act Jurisdiction

■ The Tucker Act delineates this court's jurisdiction. 28 U.S.C. § 1491 (1994). The Tucker Act does not create a substantive right to recover money damages in this court; rather, it allows recovery for claims founded on the Constitution, an act of Congress, regulation promulgated by the executive department, or any express or implied contract with the United States. 28 U.S.C. § 1491(a)(1); *Ky. Bridge & Dam, Inc. v. United States*, 42 Fed.Cl. 501, 516 (1998) (citing *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc*), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984)). A statute, regulation, or constitutional provision provides a substantive right only if it " 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " *Testan*, 424 U.S. at 400, 96 S.Ct. at 955 (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009, 178 Ct. Cl. 599 (1967); citing *Mosca v. United States*, 417 F.2d 1382, 1386, 189 Ct.Cl. 283, 290 (1969), *cert. denied*, 399 U.S. 911, 90 S.Ct. 2197, 26 L.Ed.2d 565 (1970)).

■ For a statute to be under the rubric of "money-mandating," the statute's "language and effect must be mandatory." *Deshauteurs v. United States*, 39 Fed.Cl. 263, 266 (1997) (citing *Testan*, 424 U.S. at 400, 96 S.Ct. at 954 (additional citations omitted)). Also, the statute must " 'compensate a particular class of persons for past injuries or labors.' " *Kennedy Heights Apartments, Ltd. I v. United States*, 48 Fed.Cl. 574, 579 (2001) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 906 n. 42, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)). In addition, it is not necessary for explicit language providing a right to damages in order for a statute to be considered money-mandating. *Id.* (citing *Bowen*, 487 U.S. at 900 n. 31, 108 S.Ct. 2722, 101 L.Ed.2d 749; *Navajo Nation v. United States*, 46 Fed.Cl. 217, 228 (2000)). " 'There are, of course, many statutory actions over which the Claims Court has jurisdiction that enforce a statutory mandate for the payment of money rather than obtain compensation for the Government's failure to so pay.' " *Id.* (quoting *Bowen*, 487 U.S. at 900 n. 31, 108 S.Ct. 2722, 101 L.Ed.2d 749 and citing *Testan*, 424 U.S. at 405, 96 S.Ct. 948, 47 L.Ed.2d 114 ("interpreting the Back Pay Act, 5 U.S.C. § 5596(b) (1994), as money-mandating despite lack of specific language dictating compensation for damages"); *Tippett v. United States*, 185 F.3d 1250, 1255 (Fed.Cir.1999)). If the provision is found to be "money-mandating," the party need not rely upon a waiver of sovereign immunity beyond the Tucker Act. *See Huston v. United States*, 956 F.2d 259, 261 (Fed.Cir.1992) (citing *Mitchell*, 463 U.S. at 218, 103 S.Ct. at 2968).

## III. This court does not have jurisdiction pursuant to 28 U.S.C. § 1331.

■ Plaintiffs specifically rely upon 28 U.S.C. § 1331 for jurisdiction in this court. However, their claim for jurisdiction on this basis must fail. Title 28 U.S.C. § 1331 is the federal question statute. It states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Inasmuch as the Court of Federal Claims is not a district court, plaintiffs cannot rely on federal question jurisdiction pursuant to 28 U.S.C. § 1331. *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir.1997); *Faulkner v. United States*, 43 Fed.Cl. 54, 55 (1999). Moreover, "section 1331 is merely a jurisdictional statute that 'do[es] not create any substantive right enforceable against the United States for money damages.' " *Hernandez v. United States*, 38 Fed.Cl. 532, 538 (1997) (quoting *DeVilbiss v. Small Business Administration*, 661 F.2d 716, 718 (8th Cir.1981) (citing *Testan*, 424 U.S. at 400–02, 96 S.Ct. at 954–55)). Consequently, 28 U.S.C. § 1331 does not satisfy the Tucker Act's money-mandating require-

ment for jurisdiction and plaintiffs may not rely upon the statute to secure jurisdiction in this court.

## IV. Plaintiffs may not rely upon the Civil Service Reform Act, regulations promulgated pursuant to Title 5, President Clinton's Executive Order, or the FAA Personal Management System to establish jurisdiction in this court.

For the first time in their opposition brief, plaintiffs assert that this court has jurisdiction over this matter pursuant to the Tucker Act. Plaintiffs argue that in the complaint they have presented a claim against the government founded upon regulations of an executive department by arguing that the FAA violated its own regulations promulgated under its Personnel Management System (PMS) and an Executive Order.

In contending that the government violated both statutes and regulations by participating in prohibited personnel action, plaintiffs first cite to several sections of 5 U.S.C. § 2302(b), part of the Civil Service Reform Act, as being pertinent to this action. The statute states, in relevant part:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

(1) discriminate for or against any employee or applicant for employment—

\* \* \* \* \* \*

(B) on the basis of age, as prohibited under sections 12 and 15 of the Age Discrimination Employment Act of 1967 (29 U.S.C. 631, 633a);

\* \* \* \* \* \*

(4) deceive or willfully obstruct any person with respect to such person's right to compete for employment;

(6) grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;

\* \* \* \* \* \*

(12) take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title.

5 U.S.C. § 2302(b).

A review of the language contained in 5 U.S.C. § 2302(b) shows that the statute is not money-mandating. The statute, instead, concerns discriminatory actions against employees or applicants for employment. Section 2302(b) in no manner mentions compensation or any right to recovery for damage sustained and, hence, the statute fails to express, either directly or by implication, that a party has a right to compensation for any damage sustained. *See Testan,* 424 U.S. at 400, 96 S.Ct. at 955 (citation omitted); *Eastport,* 372 F.2d at 1007. Hence, this court is not constrained to say that the referenced statute mandates compensation and that there has been a waiver of sovereign immunity. *See Mitchell,* 664 F.2d at 268–69. Indeed, plaintiffs fail to point to any part of 5 U.S.C. § 2302(b) that is money-mandating in support of their argument that jurisdiction exists in this case pursuant to the Tucker Act. Inasmuch as the CSRA is not a money-mandating statute, it is noteworthy that in those cases in which the CSRA is applicable, plaintiffs have also necessarily relied upon a money-mandating statute such as the Back Pay Act, 5 U.S.C. § 5596, to establish jurisdiction in this court. *See Worthington v. United States,* 168 F.3d 24 (Fed.Cir.1999) (former federal employee sought back pay and because plaintiff's claim fell outside of the CSRA and the Merit Systems Protection Board did not have jurisdiction, this court had jurisdiction); *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (former government employee brought suit to recover back pay as a result of suspension from employment and court held that, under the facts presented, the CSRA precluded judicial review under the Tucker Act based on the Back Pay Act); *Read v. United States,* 254 F.3d 1064 (Fed.Cir.2001)

(former FAA employee sought back pay after removal from his position and court held that the Court of Federal Claims lacked jurisdiction pursuant to the CSRA).

Given the fact that 5 U.S.C. § 2302(b) is not money-mandating in and of itself, plaintiffs cannot rely exclusively upon the statute as a basis upon which to secure jurisdiction in this court. However, the court does not dismiss the portion of plaintiffs' claim asserting jurisdiction pursuant to 5 U.S.C. § 2302(b) on the basis of lack of subject matter jurisdiction. Rather, this court dismisses this part of plaintiffs' complaint for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). *See Gollehon Farming v. United States,* 207 F.3d 1373, 1379 (Fed.Cir.2000) (stating that the appropriate disposition of a matter in which a party fails to identify a "money-mandating" provision is dismissal for failure to state a claim inasmuch as lack of a money-mandating statute is not a jurisdictional matter).

■ Likewise, the court is forced to dismiss plaintiffs' claims brought pursuant to particular cited federal regulations as their jurisdictional basis. Plaintiffs base their claims on the following federal regulations promulgated under Title 5 of the Code of Federal Regulations: (1) 5 C.F.R. § 302.302, entitled Employment in the Excepted Service, Accepting, Rating, and Arranging Applications; (2) 5 C.F.R. § 330.705, entitled Recruitment, Selection, and Placement (General)—Interagency Career Transition Assistance Plan for Displaced; and (3) 5 C.F.R. § 352.208, entitled Reemployment Rights Based on Movement Between Executive Agencies During Emergencies. All of these regulations fall under Subchapter B of Title 5, Civil Service Regulations. These regula-

tions set forth provisions concerning the examination of applicants, the order of selection of filling vacancies from outside the agency, and an agency's obligation to re-employ. Plaintiffs have failed to identify nor has the court found any portion of these regulations which mandate the payment of money or rather, compensation for " 'a particular class of persons for past injuries or labors.' " *Kennedy Heights,* 48 Fed.Cl. at 579 (quotation omitted). In fact, the court is doubtful that 5 C.F.R. § 352.208 would even apply to this matter since the regulation concerns re-employment rights during emergencies and plaintiffs have not identified such a situation in this case. Consequently, the court finds that it must dismiss plaintiffs' claims based upon the cited Civil Service Regulations.

■ President Clinton's Executive Order issued on August 12, 1993, also fails as a jurisdictional ground in this matter inasmuch as plaintiffs have not identified a money-mandating provision contained in that order. Instead, plaintiffs state that the Executive Order was "a new directive to the Office of Personnel Management which lifted the ban on FAA employment of former air traffic controllers terminated on account of the 1981 strike." Compl. at ¶ 8.[2] This fact does not demonstrate that President Clinton intended the former FAA air traffic controllers to receive compensation as a result of President Reagan's earlier ban on employment; rather, President Clinton's directive, even according to plaintiff, simply rescinded President Reagan's ban on employment. As such, this court cannot find that plaintiffs may rely upon President Clinton's August 12, 1993 order as a basis of jurisdiction in this court.

Plaintiffs also cite to the FAA's Personnel Management System, asserting that the FAA

**2.** Plaintiffs have not provided this court with a copy of President Clinton's August 12, 1993, "Executive Order," nor has this court been able to locate such order using computerized legal research databases, leading the court to the conclusion that perhaps plaintiffs have either supplied an incorrect title for President Clinton's order or an incorrect date. Nevertheless, defendant does not dispute the existence of this order or the contents thereof as set forth in plaintiffs' complaint. Thus, inasmuch as this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of

the plaintiff, *Scheuer,* 416 U.S. at 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90; *Reynolds,* 846 F.2d at 747, and there is no dispute as to the existence and contents of the document as set forth in plaintiffs' order, this court accepts plaintiffs' characterization of President Clinton's order as set forth in paragraph 8 of their complaint as true. Even accepting plaintiffs' factual allegation in paragraph 8 of their complaint as true, the court's reasoning, *supra,* with respect to whether President Clinton's order was "money-mandating" remains intact.

violated its own rules regarding prohibited personnel practices. It is noted, however, that in their complaint, plaintiffs do not specifically rely upon these particular provisions for jurisdictional purposes. Nevertheless, given plaintiffs' assertion that this court has jurisdiction because "as set forth in paragraphs 20–26 of the Complaint in this action, Plaintiffs have presented a 'claim against the United States founded upon ... regulation[s] of [an] executive department,'" and their reliance upon the FAA's Personnel Management System, the court infers that plaintiffs may intend to plead that this court may entertain their claim pursuant to the FAA's Personnel Management System. *See* Pl. Opp. at 3.

The FAA promulgated its Personnel Management System as a result of section 347 of the 1996 Department of Transportation Appropriations Act, Pub.L. 104–264, 110 Stat. 3237 (1996) (codified at 49 U.S.C. § 40122). *See* 49 U.S.C. § 40122(g)(1) (stating that "the Administrator shall develop and implement, not later than January 1, 1996, a personnel management system for the Administration that addresses the unique demands on the agency's workforce"). While 49 U.S.C. § 40122(g)(2) states that the provisions of title 5 shall not apply to the new PMS implemented pursuant to section 40122(g)(1), with exceptions, the FAA adopted many of the merit principles present in the CSRA, as is indicated in the above recitation of 5 U.S.C. § 2302(b). Specifically, plaintiffs rely upon the following section and subsections of the PMS:

## VIII. PROHIBITED PERSONNEL PRACTICES

(a) Any FAA employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority:

(i) discriminate for or against any employee or applicant for employment, on the basis of:

\*　　\*　　\*　　\*　　\*　　\*

● age

\*　　\*　　\*　　\*　　\*　　\*

(iii) deceive or willfully obstruct any person to withdraw with respect to such person's right to compete for employment;

(iv) influence any person to withdrawal from competition for any position for the purpose of improving or injuring the prospects of any other person for employment;

(v) grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;

\*　　\*　　\*　　\*　　\*　　\*

(ix) take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation, implementing or directly concerning, the merit system principles contained in this paragraph.

Def. App. 4–5.

The court comes to the same conclusion in its analysis of the FAA's PMS and determination of whether it is money-mandating as the court found in its analysis of the applicable CSRA provisions. Like the relevant CSRA provisions, the PMS in no manner allows for compensation for a past injury and plaintiffs have pointed to no such provision. Instead, the PMS provisions only list prohibited personnel actions and a plaintiff may not rely upon the PMS, alone, for jurisdiction in this court inasmuch as those provisions are not money-mandating. As such, to the extent plaintiffs base their claim for jurisdiction on the FAA's PMS, this court must dismiss plaintiffs' claim for failure to state a claim upon which relief may be granted.

**V. Even if the CSRA and the FAA's Personnel Management System were money-mandating, this court is not the proper forum for adjudication of plaintiffs' action.**

In their complaint, plaintiffs contend that since 1993, the FAA has hired, as air traffic controllers, persons other than former PATCO air traffic controllers although such persons were:

(1) substantially younger than the Plaintiffs and others similarly situated;

(2) had no prior FAA service;

(3) had no prior air traffic controller experience;

(4) had far less air traffic controller experience;

(5) had no prior federal employment experience;

(6) were not entitled to a hiring preference based on prior military service; and/or

(7) who applied for air traffic controller positions years after the Plaintiffs and others similarly situated applied for the positions.

Compl. at ¶ 23. Plaintiffs also allege that in lieu of hiring PATCO controllers, the FAA has instead "hired convicted felons, and persons with no former employment, no air traffic employment, and no military service." Compl. at ¶ 25. Consequently, plaintiffs contend that the FAA's personnel hiring actions constitute violations of 5 U.S.C. § 2302(b) and the FAA Personnel Management System because they have "by design and/or practice obstructed former PATCO controllers from FAA employment, granted preferences and advantages to persons not entitled to such favor over former PATCO controllers, and violated merit system rules and regulations, as well as an Executive Order." Compl. at ¶ 26.

### A. Plaintiffs' claim that the FAA violated the CSRA

Defendant argues that both the CSRA and the FAA's Personnel Management System provide exclusive remedies that preclude plaintiffs from seeking jurisdiction in this court. With respect to its position concerning plaintiffs' CSRA claim, defendant primarily relies upon *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) and *Read v. United States*, 254 F.3d 1064 (Fed.Cir.2001) for the proposition that this court does not possess jurisdiction to entertain allegations concerning prohibited personnel actions as outlined in 5 U.S.C. § 2302(b). In rejoinder, plaintiffs contend that their case is distinguishable from both *Fausto* and *Read* insofar as those cases involved federal employees, not applicants for

federal employment. Plaintiffs also argue that even if the CSRA applied in this instance, the OSC's denial of jurisdiction, "despite a clear direction under 5 U.S.C. § 7703(b)(1), has thwarted the Plaintiffs in asserting their claims under the procedure which the FAA had previously claimed Plaintiffs were obliged to follow." Pl. Opp. at 4.

In *Fausto*, the Supreme Court reviewed the CSRA system. The Court noted that Chapter 23 of the CSRA, upon which plaintiffs rely, "establishes the principles of the merit system of employment, § 2301, and forbids an agency to engage in certain 'prohibited personnel practices,' including unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers. § 2302." *Fausto*, 484 U.S. at 446, 108 S.Ct. 668. The high court further noted that individuals covered by the chapter "are given the right to file charges of 'prohibited personnel practices' with the Office of Special Counsel of the MSPB, whose responsibility it is to investigate the charges and, where appropriate, to seek remedial action from the agency and the MSPB. § 1206." *Id.* Upon further review of the Act and its applicability to the case in which a former federal employee brought suit seeking back pay as a result of suspension from employment, the Supreme Court stated:

> [W]e find that under the comprehensive and integrated review scheme of the CSRA, the Claims Court (and any other court relying on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency's personnel determination... Post–CSRA such an authority would include the agency itself, or the MSPB or the Federal Circuit where those entities have the authority to review the agency's determination... The CSRA established a comprehensive system for reviewing personnel action taken against federal employees. Its deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court under the Back Pay Act.

*Fausto*, 484 U.S. at 454–55, 108 S.Ct. 668.

In *Read*, the United States Court of Appeals for the Federal Circuit was confronted

with an action from a former employee of the FAA who sought back pay pursuant to the Back Pay Act after removal from his position. *Read*, 254 F.3d 1064. In its disposition of the matter, the appellate court reviewed the Supreme Court's opinion in *Fausto* and opined that "*Fausto* thus established that if the Reform Act gave the Board jurisdiction over a claim involving a specified subject matter or category of employee, the Claims Court had no jurisdiction over that claim under the Back Pay Act ..." *Read*, 254 F.3d at 1067. The court found that the principle set forth in *Fausto* applied to the matter before it, stating that:

> Here, as in *Fausto*, the Reform Act's 'comprehensive system for reviewing personnel action taken against federal employees,' 484 U.S. at 455, 108 S.Ct. 668—including 'administrative review by the MSPB,' *id.* at 447, 484 U.S. 439, 108 S.Ct. 668—'displays a clear congressional intent,' *id.*, to make Board review the exclusive statutory procedure by which employees may challenge their removal.

*Id.* The Federal Circuit also stated that in *Worthington v. United States*, 168 F.3d 24 (Fed.Cir.1999), it had previously noted that "*Fausto* deprives the Court of Federal Claims of jurisdiction over personnel actions covered by the CSRA." *Id.* at 1068 (citing *Worthington*, 168 F.3d at 26). Based on the above findings, the court ruled that the CSRA gave the MSPB jurisdiction over Read's claim. *Id.*

Despite plaintiffs' protestation, this court finds that both *Fausto* and *Read* are applicable to this matter. First, although plaintiffs are applicants, as opposed to employees, a review of the Reform Act demonstrates that the CSRA covers plaintiffs and the actions of which they complain. " 'In construing a statute ... we begin by inspecting its language for plain meaning. If the words are unambiguous, no further inquiry is usually required.' " *Superior Fireplace Co. v. The Majestic Products Co.*, 270 F.3d 1358, 1369 (2001) (quoting *Camargo Correa Metais, S.A. v. United States*, 200 F.3d 771, 773 (Fed.Cir. 1999)). The court has already set forth the applicable portions of section 2302(b) which plaintiffs allege the FAA violated. Of partic-

ular import, however, is the fact that this section prohibits the discrimination for or against "any employee or *applicant for employment.*" 5 U.S.C. § 2302(b)(1) (emphasis supplied). Pertinent to this matter as well is the fact that section 2302(a)(2)(A)(vii) covers re-employment as a "personnel action." 5 U.S.C. § 2302(a)(2)(A)(vii). Also relevant is section 2302(a)(2)(B) which states that: " 'covered position' means, with respect to any personnel action, any position in the competitive service, a career appointee position in the Senior Executive Service, or a position in the excepted service, but does not include any position which is, prior to the personnel action ..." It is undisputed that plaintiffs are seeking re-employment for a position which is a "covered position" pursuant to the Act. Thus, it is evident, from the plain language of the statute, that the CSRA covers plaintiffs inasmuch as plaintiffs are applicants seeking re-employment in a covered position.

The remedial provisions set forth in the referenced section also demonstrate that plaintiffs are covered by that section and include the remedies available for any violation of the section. Section 2302(c) states that the head of each agency is responsible for informing agency employees of their rights and remedies available under chapter 23 and chapter 12 of title 5. 5 U.S.C. § 2302(c). While subsection (c) only states that the agency should ensure that employees are informed of their rights under that chapter as well as chapter 12, it is evident by a review of subsection (d) as well as the other subsections of section 2302 that the section is concerned with the violation of prohibited personnel practices for both employees and applicants.

Subsection (d) states that: "This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to any employee or *applicant* for employment in the civil service ..." 5 U.S.C. § 2302(d) (emphasis added). Also, the court has already noted that other subsections of section 2302 include applicants for employment as individuals protected under that section. Therefore, despite the fact

that subsection 2302(c) does not specifically state that applicants are covered, in order to logically interpret the statute and not negate any of its provisions, the court finds that applicants are covered as well as employees by the applicable subsections of 2302, including 2302(c). *See Horner v. MSPB*, 815 F.2d 668, 674 (1987) (stating that "[i]t is a well-established rule of statutory interpretation that a statute should not be interpreted so as to render one part inoperative") (citing *Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979) *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962)) ("'[w]e believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act ....'"); *Superior Fireplace Co.*, 270 F.3d at 1369 ("'[w]e also consider not only the bare meaning of the word[s] but also [their] placement and purpose in the statutory scheme'") (quoting *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 721 (Fed.Cir.1998)).

As previously discussed in detail, *supra*, chapter 12 and particularly chapter 23 of the CSRA establish the principles of the merit system of federal employment; forbid an agency from certain prohibited personnel practices; and provide the rights and remedies available for both employees and applicants where there has been a violation of those provisions. It is not within the purview of this court to surmise or to second guess the parties' reasoning in the legal positions taken before other courts. Therefore, this court expresses no opinion on the position taken by counsel for the respective parties before the district court concerning the jurisdiction or lack thereof of the Office of Special Counsel over plaintiffs' claims pursuant to chapter 12 of the CSRA. Instead, this court simply opines that because the CSRA has provided a mandatory remedy for plaintiffs (via the MSPB), that is yet another reason why the Court of Federal Claims lacks jurisdiction in the instant case. Both *Fausto* and *Read* articulate the principle that if the CSRA covers a personnel action, such as the actions alleged by plaintiffs here, this court cannot then have jurisdiction over

those claims insofar as the comprehensive scheme of the CSRA has provided a remedy. *See Worthington*, 168 F.3d at 26. Accordingly, this court dismisses plaintiffs' claims with respect to the alleged CSRA violations for lack of jurisdiction.

**B. Plaintiffs' claim that the FAA violated its Personnel Management System**

As stated, plaintiffs contend that the FAA violated its Personnel Management System which was promulgated as a result of 49 U.S.C. § 40122. Defendant argues that "exclusive jurisdiction to consider appeals of adverse personnel decisions related to the Personnel Management System resides with the forums identified in the Personnel Management System—which do not include this Court—and the MSPB." Def. Mot. at 7.

The FAA Personnel Management System provides two avenues for *employees* for the review of adverse personnel actions: (1) the grievance procedure provided by collective bargaining agreements and (2) the agency's internal procedure which consists of two levels, the FAA Grievance Procedure (for minor violations) and the FAA Appeals Procedure—Guaranteed Fair Treatment (for more serious violations such as suspensions). The FAA's PMS specifically states that "This FAA Grievance Procedure shall be the sole and exclusive method by which such *employees* can seek relief from the FAA ... for issues related to the matters covered by this paragraph." Def. App. at 22, ¶ 4(a) (emphasis added).[3] The Personnel Management System further states that a decision to either grant relief or deny a grievance "is the final decision of the FAA Grievance Procedure and shall be issued at the sole discretion of the manager. The final decision of the FAA Grievance Procedure is not subject to review in any other forum." Def. App. at 24, ¶ 4(f)(ii). With respect to the FAA Appeals Procedure—Guaranteed Fair Treatment, the PMS states:

> Decisions of the panel shall be issued as final orders of the Administrator under 49 U.S.C. Section 46110. An appellant may seek judicial review of the panel's order by

---

**3.** "Def. App." refers to the appendix attached to defendant's motion to dismiss.

filing a petition for review in the United States Court of Appeals for the circuit in which the appellant resides, no later than 60 days after the panel's decision is issued. Def. App. at 26, ¶ 5(m). *See also Allen v. MSPB*, 127 F.3d 1074, 1076 (Fed.Cir.1997) (stating that the FAA's PMS ultimately permits an appellant to seek review in "either the United States Court of Appeals for the District of Columbia or the employee's regional federal circuit").

The above avenues of appeal were the only available avenues until Congress amended 49 U.S.C. § 40122 through the enactment of the Ford Act, as stated, *supra*. *See Diefenderfer v. MSPB*, 194 F.3d 1275, 1279 (Fed.Cir.1999). As a result of the Ford Act, section 40122(g) provides that:

> Under the new personnel management system developed and implemented under paragraph (1), an *employee* of the Administration may submit an appeal to the Merit Systems Protection Board and may seek judicial review of any resulting final orders or decisions of the Board from any action that was appealable to the Board under any law, rule, or regulation as of March 31, 1996.

49 U.S.C. § 40122(g)(3) (emphasis supplied). Section 40122(g)(3) was effective as of April 1, 1996. The Ford Act also amended section 40122 by specifying three avenues of appeal available to FAA employees contesting adverse personnel actions: (1) through contractual grievance procedures applicable to an employee who is a member of a collective bargaining unit; (2) through the Administration's internal process (the Guaranteed Fair Treatment); and (3) under section 40122(g)(3). 49 U.S.C. § 40122(h).

This court's review of the FAA's Personnel Management System reveals that while applicants for FAA employment are included with respect to discriminatory and thus, prohibited personnel practices, applicants are not necessarily included in the PMS's appeals process. Unlike the CSRA, the PMS is not replete with references to the FAA applicant and does not reference a right to appeal for an FAA applicant. Instead, the grievance procedures appear to focus on the internal appellate procedures for grievance claims by employees. This is demonstrated, first, in the above recitations of the FAA's PMS, and also, for example, in the FAA's Grievance, Procedure in which an employee who wishes to seek relief on a covered matter must submit the issue to his/her first level supervisor and also in the provisions for a meeting regarding the grievance which must be held with the FAA manager who received the formal grievance. Def. App. at 23–24, ¶¶ 4(e)(i) and 4(f)(i). Such language is not indicative of an intent to include FAA applicants in the grievance process. As noted in the cited references, the FAA Appeals Procedure–Guaranteed Fair Treatment is also devoid of references to applicants or applicants' appeal rights. Moreover, the Ford Act only codified the appeals procedures for the FAA's PMS and allowed for an additional avenue of appeals for employees—the MSPB. The Ford Act did not provide avenues of appeals for FAA applicants.[4]

Despite the foregoing, the court cannot say that plaintiffs are without any avenue of relief with respect to their allegations that the FAA violated its Personnel Management System. While the PMS and sections 40122(g)(3) and 40122(h) may not allow an applicant to appeal an adverse action utilizing the FAA's internal procedures, section 40122(g)(2)(H) would permit applicants to appeal prohibited personnel practices that are in violation of the FAA's Personnel Management System to the Merit Systems Protection Board. Section 40122(g)(2) states that the provisions of title 5 are inapplicable to the FAA's Personnel Management System, with seven exceptions, one of which is "sections 1204, 1211–1218, 1221, and 7701–7703, relating to the Merit Systems Protection Board." 49 U.S.C. § 40122(g)(2)(H). Of particular import is 5 U.S.C. § 7701 which states the appellate procedures for the MSPB. Section 7701 states that: "[a]n em-

---

4. *See Zufan v. Department of Transportation*, 91 M.S.P.R. 258, 264 (2002) (finding, where FAA applicant petitioned for review of initial decision dismissing claim involving a negative suitability determination, that while section 40122(g)(3) restored Board appeal rights to FAA employees, it did not give such rights to applicants).

ployee, or *applicant for employment,* may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a) (emphasis supplied). Thus, section 40122(g)(2) allows for an applicant's allegation that the FAA engaged in prohibited personnel practices as set forth in its PMS via section 7701(a). As such, this court finds that since plaintiffs have a right to appeal to the MSPB, they do not have an independent cause of action in this court. *McClary v. United States,* 775 F.2d 280, 282 (Fed.Cir.1985) (stating that "[w]here an employee is provided a means of redress under the CSRA, that is, an appeal to the Board, the employee does not have an independent cause of action in the Claims Court"); *Pueschel v. United States,* 297 F.3d 1371, 1378 (Fed.Cir.2002) (stating that "[t]his court has long held that the Court of Federal Claims does not have jurisdiction over a case that could be heard by the MSPB") (citations omitted). The court thus dismisses plaintiffs' claims concerning the FAA's alleged violations of its Personnel Management System for lack of jurisdiction.

## CONCLUSION

In light of the above, the court finds that it lacks jurisdiction to entertain plaintiffs' claims. As such, the court need not address defendant's statute of limitations arguments and plaintiffs' requests for certification of this case as a class action or that this court issue a declaratory judgment.

Accordingly, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss is **GRANTED**;

(2) The Clerk's office is directed to enter judgment for defendant, dismissing plaintiffs' complaint filed April 22, 2002, with prejudice; and

(3) Each party shall bear its own costs.